1   DAVID H. KRAMER (CA SBN 168452)   BRIAN M. WILLEN (*pro hac vice*)
    dkramer@wsgr.com                  bwillen@wsgr.com
2   LAUREN GALLO WHITE (CA SBN 309075)   WILSON SONSINI
    lwhite@wsgr.com                        GOODRICH & ROSATI, P.C.
3   WILSON SONSINI                    1301 Avenue of the Americas
      GOODRICH & ROSATI, P.C.         New York, New York 10019
4   650 Page Mill Road                Telephone:    (212) 999-5800
    Palo Alto, California 94304       Facsimile:    (212) 999-5899
5   Telephone:    (650) 493-9300
    Facsimile:    (650) 565-5100
6

7   ***Attorneys for Defendant***
    **GOOGLE LLC**

8

### UNITED STATES DISTRICT COURT

9

### NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

10

11

| | |
|---|---|
| REYNALDO GONZALEZ, the ESTATE OF NOHEMI GONZALEZ, BEATRIZ GONZALEZ, Individually and as the Representative of the Estate of Nohemi Gonzalez, JOSE HERNANDEZ, REY GONZALEZ, and PAUL GONZALEZ,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | CASE NO.:  4:16-cv-03282-DMR<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT GOOGLE LLC TO DISMISS THE THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Donna M. Ryu<br><br>[Fed. R. Civ. Proc. 12(b)(6)]<br><br>Hearing Date:  March 8, 2018 |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ...........................................................................1

STATEMENT OF REQUESTED RELIEF ......................................................................1

STATEMENT OF ISSUES TO BE DECIDED................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

INTRODUCTION.............................................................................................................1

FACTUAL BACKGROUND ...........................................................................................3

      A.    Prior Proceedings In This Case ......................................................................3

      B.    New Allegations In The TAC .........................................................................4

      C.    New Causes Of Action In The TAC ...............................................................5

LEGAL STANDARDS ON A MOTION TO DISMISS ..................................................6

ARGUMENT ....................................................................................................................7

I.      SECTION 230 REQUIRES DISMISSAL OF ALL OF PLAINTIFFS' CLAIMS............7

      A.    This Court's Prior Ruling Forecloses Plaintiffs' Claims ...............................7

      B.    Section 230 Bars Plaintiffs' New Causes Of Action......................................9

II.     PLAINTIFFS' NEW CAUSES OF ACTION FAIL TO STATE A CLAIM ..................12

      A.    Google Did Not Violate The Material Support Laws Or IEEPA........................12

            1.    Plaintiffs Cannot Satisfy The Scienter Requirements For Any Of The Criminal Statutes They Have Invoked ................................................12

            2.    Plaintiffs Have Not Alleged That Google Unlawfully Concealed An Act Of Material Support ............................................................................15

      B.    Plaintiffs Fail To Allege That Google Committed An "Act Of International Terrorism" Under Section 2333(a)................................................................16

      C.    Plaintiffs Fail To Plausibly Allege Proximate Cause...........................................18

III.    PLAINTIFFS' CONCLUSORY ALLEGATIONS OF REVENUE SHARING CANNOT OVERCOME THIS COURT'S RULING.......................................................19

CONCLUSION ...............................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ahmad v. Christian Friends of Israeli Cmtys.*,
   2014 U.S. Dist. LEXIS 62053 (S.D.N.Y. May 5, 2014),.....................................13, 17, 19, 22

*Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury*,
   686 F.3d 965 (9th Cir. 2012)............................................................................................13

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006).........................................................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................6, 7, 14, 21

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009).................................................................................8, 10, 22

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003)..........................................................................................11

*Brill v. Chevron Corp.*,
   2017 U.S. Dist. LEXIS 4132 (N.D. Cal. Jan. 9, 2017) ...........................................17, 18, 22

*Chinatown Neighborhood Ass'n v. Harris*,
   33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014), .......................................................................7

*Chodos v. W. Publ'g Co.*,
   292 F.3d 992 (9th Cir. 2002)............................................................................................22

*Cohen v. Facebook, Inc.*,
   252 F. Supp. 3d 140, 161 (E.D.N.Y. 2017)........................................................................3, 8

*Dyroff v. Ultimate Software Grp., Inc.*,
   2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017)..............................................9, 11

*Evans v. Hewlett-Packard Co.*,
   2013 U.S. Dist. LEXIS 146989 (N.D. Cal. Oct. 10, 2013) .................................................22

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008)........................................................................................7, 11

*Fields v. Twitter, Inc.* (*Fields I*),
   200 F. Supp. 3d 964, 974 n.4 (N.D. Cal. 2016) .................................................................18

*Fields v. Twitter, Inc.* (*Fields II*),
   217 F. Supp. 3d 1116, 1129-30 (N.D. Cal. 2016) ...........................................................3, 19

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ............................................................................................................13

*In re Gardner*,
   563 F.3d 981 (9th Cir. 2009)............................................................................................22

*In re Gilead Scis. Sec. Litig.*,
 536 F.3d 1049 (9th Cir. 2008).................................................................6, 7

*In re Terrorist Attacks on Sept. 11, 2001* (*Al Rajhi Bank*),
 714 F.3d 118 (2d Cir. 2013)..................................................................18

*In re Terrorist Attacks on Sept. 11, 2001* (*Burnett II*),
 349 F. Supp. 2d 765 (S.D.N.Y. 2005).................................................7, 18

*Klayman v. Zuckerberg*,
 753 F.3d 1354 (D.C. Cir. 2014) ...............................................................7

*Nasser v. Whitepages, Inc.*,
 2013 U.S. Dist. LEXIS 166133 (W.D. Va. Nov. 22, 2013).............................22

*Ofisi v. BNP Paribas, S.A.*,
 2017 U.S. Dist. LEXIS 160648 (D.D.C. Sept. 29, 2017)..............................18

*Owens v. BNP Paribas, S.A.*,
 235 F. Supp. 3d 85 (D.D.C. 2017) .........................................................12

*Pennie v. Twitter, Inc.*,
 2017 U.S. Dist. LEXIS 199250 (N.D. Cal. Dec. 4, 2017) ...................3, 9, 19, 20

*Ranjha v. Dep't of Homeland Sec.*,
 2011 U.S. Dist. LEXIS 66268 (E.D. Va. June 7, 2011)..............................15, 16

*Rieckborn v. Jefferies LLC*,
 81 F. Supp. 3d 902, 913 (N.D. Cal. 2015) ..................................................6

*Rothstein v. UBS AG*,
 708 F.3d 82 (2d Cir. 2013)...............................................................7, 18

*Stansell v. BGP, Inc.*,
 2011 U.S. Dist. LEXIS 39808 (M.D. Fla. Mar. 31, 2011)................................17

*Stratton Oakmont v. Prodigy Servs. Co.*, 1995 N.Y. Misc. LEXIS 229
 (N.Y. Sup. Ct. May 24, 1995) ................................................................11

*Stutts v. De Dietrich Grp.*,
 2006 U.S. Dist. LEXIS 47638 (E.D.N.Y. June 30, 2006).................................17

*United States v. El-Mezain*,
 664 F.3d 467 (5th Cir. 2011)..................................................................10

*United States v. Sattar*,
 314 F. Supp. 2d 279 (S.D.N.Y. 2004) ......................................................16

*United States v. Stewart*,
 590 F.3d 93 (2d Cir. 2009).....................................................................13

*United States v. Zhi Yong Guo*,
 634 F.3d 1119 (9th Cir. 2011).................................................................14

*Weiss v. Nat'l Westminster Bank PLC*,
 768 F.3d 202 (2d Cir. 2014)...................................................................13

*Youngstown Sheet & Tube Co. v. Sawyer* (*Steel Seizure Case*),
    343 U.S. 579 (1952) ..................................................................................................6

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997)...................................................................................11

**STATUTES**

18 U.S.C. § 2331 ...............................................................................................1, 12, 17

18 U.S.C. § 2333 ................................................................................................ *passim*

18 U.S.C. § 2339A .............................................................................................. *passim*

18 U.S.C. § 2339B .............................................................................................. *passim*

18 U.S.C. § 2339C(c) .......................................................................................... *passim*

47 U.S.C. § 230 .................................................................................................. *passim*

50 U.S.C. § 1701(a).....................................................................................................6

50 U.S.C. § 1702 .........................................................................................................6

50 U.S.C. § 1704 .........................................................................................................6

50 U.S.C. § 1705 ................................................................................................ *passim*

**RULES**

31 C.F.R. Part 594 ...................................................................................................2, 6

Exec. Order No. 13224, 66 Fed. Reg. 49,079 (Sept. 23, 2001)................................6

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 6

1

**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE that on March 8, 2018, at 11:00 a.m., in the United States

3 District Court for the Northern District of California, Courtroom 4, 1301 Clay Street, Oakland,

4 California 94612, Defendant Google LLC ("Google") shall and hereby does move for an order

5 dismissing with prejudice all claims advanced by Plaintiffs in their Third Amended Complaint

6 (Dkt. 111, "TAC").

7      This motion is based on the following Memorandum of Points and Authorities and such

8 other written and oral argument as may be presented at or before the time this motion is taken

9 under submission by the Court.

10

**STATEMENT OF REQUESTED RELIEF**

11     Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 47 U.S.C. § 230(c), Google

12 requests that the Court dismiss all of Plaintiffs' claims without further leave to amend.

13

**STATEMENT OF ISSUES TO BE DECIDED**

14     1.      Whether the limited new allegations that Plaintiffs have added to their Third

15 Amended Complaint allow Plaintiffs to escape this Court's ruling that Section 230 of the

16 Communications Decency Act ("CDA"), 47 U.S.C. § 230 ("Section 230") bars this action in its

17 entirety.

18     2.      Whether the TAC fails to state a claim under the Anti-Terrorism Act, 18 U.S.C.

19 § 2333(a) ("ATA"), because the TAC fails to allege (a) that Google itself engaged in an act of

20 "international terrorism" as defined in 18 U.S.C. § 2331; or (b) that Google's allegedly wrongful

21 conduct proximately caused Plaintiffs' injuries.

22

**MEMORANDUM OF POINTS AND AUTHORITIES**

23

**INTRODUCTION**

24     In its order dismissing Plaintiffs' previous complaint, this Court held that Section 230 of

25 the CDA bars claims against Google arising from the November 2015 ISIS terrorist attack in

26 Paris, France. As this Court recognized, what Plaintiffs are seeking to do in this case—impose

27 civil liability on Google based on the actions that it allegedly took, or failed to take, in regard to

28 content posted on YouTube—would impermissibly "treat[]" Google as a "publisher" of

"information provided by another," 47 U.S.C. § 230(c)(1). *See* Dkt. 110 ("MTD Ruling") at 17-21. In the most recent version of their complaint, Plaintiffs try to repackage the same misguided theories that this Court has already rejected. But nothing meaningful has changed. Neither the handful of conclusory new allegations that Plaintiffs offer, nor the two new legal claims they assert, meaningfully address the problems this Court identified or come close to stating a viable claim under the ATA. This Court should put a stop to Plaintiffs' misguided effort to hold Google liable for what ISIS did in Paris.

*First*, nothing that Plaintiffs allege can overcome this Court's conclusion that Section 230 bars this action in full. As before, the claims asserted in the TAC—that Google aided and abetted, conspired with, provided material support or resources to ISIS, or concealed such support—all have the same premise: that Google did not do enough to remove certain material or to block certain users on YouTube. These claims remain "inextricably bound up with the content of ISIS's postings" and thus fall squarely within Section 230's immunity. MTD Ruling at 18. Plaintiffs make no serious effort to confront this Court's decision. If anything, the few additional factual allegations included in the TAC further confirm Google's entitlement to CDA protection.

*Second*, in addition to being barred by Section 230, the two new claims that Plaintiffs seek to advance under the ATA's civil remedy provision fail as a matter of law. With only a handful of conclusory allegations, Plaintiffs now claim that Google (1) provided funds, goods, or services to ISIS, in violation of the International Emergency Economic Powers Act ("IEEPA"), 31 C.F.R. Part 594, 50 U.S.C. § 1705(c) (Count VI), and (2) "concealed" the supposed provision of "material support" to ISIS, in violation of 18 U.S.C. § 2339C(c) (Count V). Like the ATA claims offered in the SAC, Plaintiffs' new claims are flawed in multiple respects. As an initial matter, Plaintiffs come nowhere close to alleging facts plausibly suggesting that Google violated the criminal statutes they invoke. Beyond that, such supposed violations, by themselves, do not amount to an "act of international terrorism" required for liability under the ATA. Finally, Plaintiffs still fail to plausibly allege that Google's purported conduct proximately caused the Paris attack.

*Third*, Plaintiffs' token efforts to prop up their allegations that Google shared revenue with ISIS are not enough to get around this Court's prior ruling. Plaintiffs' revenue-sharing allegations continue to be based on a single "screenshot example of an alleged targeted ad next to an ISIS video on YouTube." MTD Ruling at 23. Plaintiffs do not allege any new facts to suggest that this video was actually uploaded by ISIS, much less that Google *knew* that it had been, yet shared revenue with the uploader anyway. Nor do Plaintiffs allege anything to suggest that Google's purported revenue sharing had any connection whatsoever to the Paris attack. The TAC's threadbare and unsupported legal conclusions fall well short of stating a viable claim.

The Plaintiffs in this case deserve sympathy. But Google is not responsible for ISIS's appalling crimes, and the law does not allow Plaintiffs' claim to proceed. This case should once again be dismissed. And, given the multiple opportunities Plaintiffs have already had to amend their complaint, dismissal should now be with prejudice. *Accord Pennie v. Twitter, Inc.*, 2017 U.S. Dist. LEXIS 199250, at *42-43 (N.D. Cal. Dec. 4, 2017) (dismissing with prejudice similar ATA claims against Google, Twitter, and Facebook); *Fields v. Twitter, Inc.* (*Fields II*), 217 F. Supp. 3d 1116, 1129-30 (N.D. Cal. 2016) (same as to claims against Twitter); *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 161 (E.D.N.Y. 2017) (same as to claims against Facebook).

## FACTUAL BACKGROUND

The TAC represents Plaintiffs' fourth effort to hold Google liable for the November 2015 ISIS terrorist attack in Paris. Other than a handful of new allegations that make no legal difference, the TAC is materially identical to the previous version of Plaintiffs' complaint.

### A.  Prior Proceedings In This Case

In their original complaint against Twitter, Inc., Google LLC, and Facebook, Inc., filed on June 14, 2016 (Dkt. 1), Plaintiffs sought to hold Defendants liable based on the theory that Defendants did not do enough to prevent a handful of unidentified users—who Plaintiffs suspect to be affiliated with ISIS—from posting videos and other material on their services, and that Defendants' failure amounted to an "act of international terrorism" that led proximately to the death of Nohemi Gonzalez. Defendants jointly moved to dismiss the complaint. Dkt. 36. Plaintiffs responded by filing an amended complaint on December 2, 2016 (Dkt. 55) and, on

April 21, 2017, Plaintiffs filed their SAC solely against Google (Dkt. 95). The SAC asserted four causes of action under the civil liability provision of the ATA, 18 U.S.C. § 2333(a)—two for secondary liability based on § 2333(d), and two for direct liability based on alleged violations of the material support statutes, §§ 2339A, 2339B. SAC ¶¶ 478-504.

In a comprehensive ruling issued on October 23, 2017, this Court dismissed the SAC in its entirety. MTD Ruling at 26. The Court held that, because Plaintiffs' claims sought to treat Google as the publisher or speaker of third-party content, each of "Plaintiffs' claims fall within the scope of section 230(c)(1)'s grant of immunity and are therefore barred." *Id.* at 21, 26. The Court also acknowledged Plaintiffs' theory that Google had supposedly shared advertising revenue with the uploader of one video that Plaintiffs had claimed was an "ISIS video." *Id.* at 26. The Court rejected this theory, noting that Plaintiffs had failed to allege that revenue was actually shared with the uploader of the video at issue or that the uploader was actually a member of ISIS. *Id.* The Court, however, granted Plaintiffs a further opportunity to amend.

**B.     New Allegations In The TAC**

The TAC advances the same general theory of liability as its predecessor. Like the SAC, the TAC sets forth a detailed account of the Paris attack, including the formation of alleged ISIS networks credited with recruiting and radicalizing the individuals who, according to the TAC, are credited with "directly" carrying out the attacks. TAC ¶ 306; *see id.* ¶¶ 299-470. Like the SAC, the TAC then identifies various videos that allegedly were posted on YouTube at the direction of individuals affiliated with ISIS (*see, e.g.*, TAC ¶¶ 127, 143, 227, 230, 245, 260, 263), and alleges that ISIS used videos like these to recruit, indoctrinate, incite fear, and communicate messages about terror attacks (*see* TAC ¶¶ 185-298). And like the SAC, the TAC admits that all of the referenced videos were created entirely by third parties—specifically, by alleged terrorists and their supporters—not by Google. TAC ¶ 540.

In terms of supporting allegations, the TAC is not meaningfully different from its predecessor. The TAC sets out the same history of ISIS (*compare* TAC ¶¶ 82-153, *with* SAC ¶¶ 60-130), but now includes additional information about certain terrorist attacks in the 1980s and the evolution of anti-terrorism legislation that followed (TAC ¶¶ 34-78, 80). Plaintiffs also

1   include additional details about the founding, expansion, and operations of ISIS (*see, e.g.*, TAC

2   ¶¶ 82-88, 118, 124, 139, 218-220, 295); they point out additional violations of U.S. criminal law

3   committed by ISIS (*see* TAC ¶ 560); and they note the designation of certain ISIS-related

4   individuals as Specially Designated Global Terrorists (*see* TAC ¶¶ 133, 317, 364, 386).

5       With respect to Google, there is almost nothing new. The TAC again describes the basic

6   functions of the YouTube service (*see* TAC ¶¶ 156, 158, 160); the way users register for and

7   interact with the service (*see, e.g.*, TAC ¶¶ 167-172, 174-181, 184, 515-520, 523, 534, 539); and

8   the terms and policies that govern the use of YouTube, as well as Google's work to enforce the

9   same (*see* TAC ¶¶ 164-166, 200, 514)—just as alleged in the SAC (*see, e.g.*, SAC ¶¶ 131-138,

10  236, 429, 435, 438-440, 448-449, 452-453, 459-460). And, as in the SAC, the TAC admits both

11  that YouTube's policies prohibit content that promotes violence and terrorism (TAC ¶ 200), and

12  that YouTube works hard to identify and remove content that violates these policies (TAC

13  ¶¶ 492-493, 502, 511). Plaintiffs also restate the conclusory allegations in the SAC that Google

14  lent "material support" to ISIS by offering its service to the public. *Compare* TAC ¶¶ 21, 23,

15  573-585, *with* SAC ¶¶ 21, 23, 492-504. This time, Plaintiffs add further allegations that YouTube

16  aids ISIS by recommending video content to users (TAC ¶ 535), and by allowing users to

17  communicate through comments and messages (TAC ¶ 553). In addition, in connection with the

18  same video described in their SAC as appearing alongside a targeted advertisement (SAC ¶ 458),

19  Plaintiffs add a single conclusory statement that the video "was created by ISIS and was posted

20  by ISIS using a known ISIS account" and, "[o]n information and belief … YouTube shared

21  revenue with ISIS." TAC ¶ 533. The TAC does not allege any facts in support of these new

22  conclusions, that seemingly have been invented from thin air after almost a year of litigation.

23      **C.    New Causes Of Action In The TAC**

24      Beyond their minimal new allegations, Plaintiffs advance two new causes of action: one

25  for concealment, in violation of 18 U.S.C. § 2339C(c) (TAC ¶¶ 586-590), and the other for

26  violation of terrorism sanctions regulations issued pursuant to IEEPA, 50 U.S.C. § 1705(c) (TAC

27

28

¶¶ 591-594).[1] There are almost no factual allegations offered in support of these new legal claims. Plaintiffs' concealment theory appears to be that Google provided services to ISIS, as previously alleged, that those publicly-available services constituted material support, and that Google's public policies and statements to the contrary, and its alleged responses to some unspecified government requests, somehow constitute concealment of that supposed support. TAC ¶¶ 200-205, 495-497, 510-513, 587-588. With respect to the alleged violation of IEEPA, Plaintiffs claim that Google provided funds, goods, or services to ISIS (TAC ¶¶ 592-594)— again, as previously alleged in connection with Plaintiffs' material support claims (SAC ¶¶ 493-495, 500).

Though these claims are new to the TAC, they seek redress under the same civil remedy provision of the ATA as Plaintiffs' prior claims (Section 2333(a)), and they rest on the same theory: that Google's purported failure to remove certain content and users from YouTube renders Google liable for ISIS's terrorist attack in Paris.

## LEGAL STANDARDS ON A MOTION TO DISMISS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face only if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 913 (N.D. Cal. 2015) (quoting *In re*

---

[1] IEEPA authorizes the President to declare a national emergency "to deal with any unusual and extraordinary [foreign] threat" (50 U.S.C. § 1701(a)), including by blocking or seizing property (*id*. § 1702(a)(1)(B)). *See, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer* (*Steel Seizure Case*), 343 U.S. 579 (1952). Executive Order 13224 was enacted pursuant to the authority provided in IEEPA to provide a mechanism for blocking or seizing assets held by financial institutions on behalf of designated terrorists. IEEPA, in turn, authorizes the executive to issue regulations consistent with the Executive Order, including, e.g., 31 C.F.R. § 594.204. *See* 50 U.S.C. § 1704; Exec. Order No. 13224, 66 Fed. Reg. 49,079, § 7 (Sept. 23, 2001); *see also* TAC ¶¶ 65-67, 153, 592. A violation of IEEPA or its operative regulations is punishable as provided by 50 U.S.C. § 1705.

1  *Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). Nor is the court "bound to accept

2  as true a legal conclusion couched as a factual allegation." *Chinatown Neighborhood Ass'n v.*

3  *Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014) (citation omitted), *aff'd*, 794 F.3d 1136 (9th

4  Cir. 2015). "Threadbare recitals of the elements of a cause of action, supported by mere

5  conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

6       Careful attention to these basic pleading requirements is especially important in this case.

7  Because Section 230 is intended to "protect websites not merely from ultimate liability, but from

8  having to fight costly and protracted legal battles," (*Fair Hous. Council of San Fernando Valley*

9  *v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008)), dismissal on the pleadings is

10  warranted where, as here, the defendant's entitlement to immunity "is evident from the face of

11  the complaint" (*Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014)). Moreover,

12  given "the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of

13  Plaintiffs' allegations." *In re Terrorist Attacks on Sept. 11, 2001* (*Burnett II*), 349 F. Supp. 2d

14  765, 831 (S.D.N.Y. 2005) (citation omitted), *aff'd*, 714 F.3d 118 (2d Cir. 2013); *see also*

15  *Rothstein v. UBS AG*, 708 F.3d 82, 93-98 (2d Cir. 2013).

16  **ARGUMENT**

17       In light of this Court's ruling dismissing the SAC, the core theory that Plaintiffs advance

18  in this case—that Google is liable for failing to block content or users allegedly associated with

19  ISIS—is categorically barred by Section 230. The TAC does not meaningfully respond to that

20  holding. Plaintiffs offer only a handful of new allegations—including two new claims under the

21  ATA and an entirely conclusory (and false) statement that Google shared revenue with ISIS in

22  connection with a single video. These allegations cannot overcome Section 230 or state a viable

23  claim against Google.

24  **I.  SECTION 230 REQUIRES DISMISSAL OF ALL OF PLAINTIFFS' CLAIMS**

25      **A.  <u>This Court's Prior Ruling Forecloses Plaintiffs' Claims</u>**

26       In its prior decision, this Court made clear that Section 230 broadly forecloses any effort

27  by Plaintiffs to impose liability on Google because Google allegedly failed to do enough to stop

28  ISIS from using YouTube. MTD Ruling at 17-19 (rejecting Plaintiffs' theory about "'ISIS's

extensive use of Google's services' to disseminate its terrorist message" and the supposedly "'essential' role that YouTube has played 'in the rise of ISIS'"). On that basis, the Court dismissed the four causes of action asserted in the SAC—two claims for direct liability under Section 2333(a) (based on two different provisions of the material support statutes (Sections 2339A and 2339B)), and two claims for secondary liability under Section 2333(d) (for aiding and abetting and conspiracy). MTD Ruling at 5, 26-27.

That holding applies fully to the TAC. As discussed above, the allegations in the latest version of Plaintiffs' complaint duplicate in nearly every respect those that the Court has already found to be barred by Section 230. Indeed, the material support, aiding and abetting, and conspiracy claims in the TAC (Counts I-IV) are effectively identical to the versions of those claims in the SAC. *Compare* SAC ¶¶ 478-504, *with* TAC ¶¶ 558-585. As before, those claims "inherently require[] the court to treat [Google] as the 'publisher or speaker' of [third-party] content" because they "require recourse to that content to establish liability or implicate a defendant's role … in publishing or excluding third party communications." MTD Ruling at 16-19 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009); *Cohen*, 252 F. Supp. 3d at 156). Google remains fully protected against those claims.

The handful of new factual allegations that Plaintiffs have added do nothing to help them evade this Court's comprehensive ruling. These allegations only highlight why Google is entitled to Section 230 protection. For example, Plaintiffs now expressly acknowledge that "Google does not preview or edit content published by users," but instead enables users to upload content "in 'real-time' or nearly 'real-time.'" TAC ¶¶ 176-177; *see also id.* ¶ 174. While Plaintiffs' theory of liability remains "inextricably bound up with the content of ISIS's postings" (MTD Ruling at 18), these new allegations make even more clear that the content at issue is "provided by another information content provider" and that holding Google liable for such content would impermissibly treat it as a publisher. 47 U.S.C. § 230(c)(1).

Similarly, Plaintiffs describe YouTube as a platform "that *enables users* to establish their own YouTube 'channels' or 'accounts,' and *to serve as self-publishers of content*." TAC ¶ 160 (emphasis added). This confirms that Plaintiffs' claims continue to "implicate [Google's] role,

broadly defined, in publishing or excluding third party communications." MTD Ruling at 17. That is so regardless of the alleged cost of developing YouTube (*e.g.*, TAC ¶ 179), or the alleged value that YouTube's service provides to its users (TAC ¶¶ 180-181). These allegations serve only to highlight Google's status as an interactive computer service provider making users' content available to the public. That is the essence of what Section 230 protects. In short, the little new that the TAC offers about the operation of YouTube does nothing to rescue Plaintiffs' impermissible effort to hold Google liable for actions it allegedly took (or failed to take) regarding third-party content and the users who posted it. For the same reasons that led this Court to dismiss the SAC, Section 230 requires dismissal of the TAC.

While the prior ruling in this case speaks for itself, more recent decisions have only confirmed the soundness of this Court's analysis and its application to Plaintiffs' claims. *See, e.g.*, *Pennie*, 2017 U.S. Dist. LEXIS 199250, at *15-18, *34-42 (adopting this Court's reasoning and holding that Section 230 barred very similar ATA claims against Google, Twitter, and Facebook); *Dyroff v. Ultimate Software Grp., Inc.*, 2017 U.S. Dist. LEXIS 194524, at *18-19, *22-26 (N.D. Cal. Nov. 26, 2017) (agreeing with this Court's prior ruling and holding that an online service acts as a publisher of third-party content notwithstanding plaintiff's focus on the service's provision of tools and functionality).[2]

## B.  Section 230 Bars Plaintiffs' New Causes Of Action

In addition to repeating the causes of action asserted in their SAC, Plaintiffs offer two new claims under the ATA. These claims are equally barred by Section 230.

---

[2] Because this Court has ruled that Section 230 bars Plaintiffs' secondary liability claims under Section 2333(d)—for aiding and abetting and conspiracy—and because Plaintiffs make no new allegations in support of those claims, Google will not repeat its arguments for why those claims fail on their own terms. Instead, in the interest of brevity, Google incorporates the arguments on those points made in its motion to dismiss the SAC. Motion to Dismiss SAC (Dkt. 100) at 15-20; Reply ISO Motion to Dismiss SAC (Dkt. 102) at 8-13 (explaining that Plaintiffs failed to allege facts that would establish that Google: (1) knowingly provided substantial assistance to the individuals who committed the Paris terrorist attacks (Count I); or (2) entered into any kind of unlawful agreement with those attackers to help them achieve their unlawful purpose (Count II)).

*First*, Plaintiffs assert that Google violated the criminal provision associated with IEEPA, 50 U.S.C. § 1705(c), by allegedly providing funds, goods, or services to ISIS. TAC ¶¶ 591-594. This claim is nothing more than a restated version of Plaintiffs' claims under the material support statutes (claims repeated in the TAC as Counts III and IV). The theory of all of these claims is identical: Google supposedly provided services to ISIS by not doing enough to prevent ISIS-related users from posting videos and other material on YouTube. But Plaintiffs cannot evade Section 230 by putting old wine into new bottles. As the Ninth Circuit has explained, "what matters is not the name of the cause of action," but "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101-02. This Court already held that Section 230 precludes Plaintiffs' claims based on the material support laws. MTD Ruling at 26. That analysis fully applies to Plaintiffs' indistinguishable claim under IEEPA. *Cf. United States v. El-Mezain*, 664 F.3d 467, 548 (5th Cir. 2011) (recognizing that claims brought under IEEPA are "the same or similar" to claims under the material support statute).

*Second*, Plaintiffs allege that Google unlawfully *concealed* its alleged provision of material support to ISIS, in violation of 18 U.S.C. § 2339C(c). TAC ¶¶ 298, 586-590. The purported factual basis for this new claim is not entirely clear, but Plaintiffs' theory seems to be that Google's policies prohibiting terrorist content on YouTube—and its acknowledged efforts to remove that content—somehow function to conceal the fact that not all such content is identified and removed. TAC ¶¶ 202, 510-13. As discussed below, this is simply not a viable claim under Section 2339C(c), but it also fails under Section 230 for the same reason as Plaintiffs' underlying material support claims. Plaintiffs' "concealment" theory is simply another way of alleging that Google failed to do enough, in Plaintiff's view, to police its service or prevent it from being misused by ISIS. Indeed, a foundational element of a claim under Section 2339C(c) is the existence of an act of "material support," which the defendant acted to conceal, "knowing that the support or resources were provided, in violation of section 2339B." 18 U.S.C. § 2339C(c). To move forward with their concealment claim, therefore, Plaintiffs would need to establish that Google actually provided material support. But, as this Court has already found, any claim that

1  depends on such an allegation is squarely barred by Section 230, as it is "inextricably bound up"

2  with Google's "decision to permit third parties to post content." MTD Ruling at 18-19. As with

3  their IEEPA claim, Plaintiffs cannot escape this Court's ruling by recasting their same theory

4  under a new statutory label.

5          Beyond that, Plaintiffs' concealment claim directly implicates one of Section 230's core

6  purposes. What Plaintiffs seek to describe as "concealment" is actually a core publisher activity:

7  engaging in self-regulation by promulgating content policies and taking steps to removal material

8  found to be in violation of those policies. Plaintiffs now seek to use those self-regulatory

9  activities as the basis to hold Google liable for not removing more content. But Section 230 was

10  expressly intended to prohibit this theory of liability. Prior to Section 230's enactment, "[u]nder

11  the reasoning of *Stratton Oakmont* [*v. Prodigy Servs. Co.*, 1995 N.Y. Misc. LEXIS 229 (N.Y.

12  Sup. Ct. May 24, 1995)], online service providers that voluntarily filter[ed] some messages

13  bec[a]me liable for all messages transmitted, whereas providers that bur[ied] their heads in the

14  sand and ignore[d] problematic posts altogether escape[d] liability." *Roommates*, 521 F.3d at

15  1163. "Congress enacted § 230 to remove the disincentives to self-regulation created by the

16  *Stratton Oakmont* decision." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997). It

17  recognized that "[i]f efforts to review and omit third-party defamatory, obscene or inappropriate

18  material make a computer service provider or user liable for posted speech, then website

19  operators and Internet service providers are likely to abandon efforts to eliminate such material

20  from their site." *Batzel v. Smith*, 333 F.3d 1018, 1029 (9th Cir. 2003).

21          Plaintiffs' concealment theory would create just such perverse disincentives. As in

22  *Stratton Oakmont*, this theory would mean that a provider that prohibits objectionable content

23  and works to remove it could face greater liability than one that prohibits and removes nothing.

24  Congress specifically intended to prevent that result. Section 230 prohibits Plaintiffs from trying

25  to transform Google's efforts at self-regulation into the supposedly unlawful "concealment" of

26  material support. *See Zeran*, 129 F.3d at 331 (Section "230 forbids the imposition of publisher

27  liability on a service provider for the exercise of its editorial and self-regulatory functions");

28  *accord Dyroff*, 2017 U.S. Dist. LEXIS 194524, at *26-27 (Section 230 applies notwithstanding

---

1   alleged "anonymity policies and antipathy to law-enforcement requests" that allegedly "shielded

2   bad actors").

3       In short, all of Plaintiffs' claims are barred by Section 230. The Court need go no further

4   to once again dismiss this case, and this time to do so with prejudice.

5   **II.   PLAINTIFFS' NEW CAUSES OF ACTION FAIL TO STATE A CLAIM**

6       Even apart from Section 230, Plaintiffs' claims fail as a matter of law. As in the SAC, all

7   of Plaintiffs claims seek to impose liability on Google under the civil remedy provision of the

8   ATA, 18 U.S.C. § 2333(a). A claim under this provision requires plausible allegations that the

9   defendant committed an "act of international terrorism," which includes at least three distinct

10  elements: (1) a criminal violation that (2) "involve[s] violent acts or acts dangerous to human

11  life" and that (3) "appear[s] to be intended" to "intimidate or coerce a civilian population,"

12  "influence the policy of a government by intimidation or coercion," or "affect the conduct of a

13  government by mass destruction, assassination, or kidnapping." 18 U.S.C. § 2331(1)(A), (B);

14  *accord Owens v. BNP Paribas, S.A.*, 235 F. Supp. 3d 85, 90-91 (D.D.C. 2017) ("The civil

15  liability provision thus incorporates by reference a broad range of state and federal crimes that

16  *may* constitute 'acts of international terrorism' *if* a plaintiff can show *both* that a defendant

17  committed the criminal violation *and* that the crime satisfies the additional criteria listed above."

18  (emphasis added)). The TAC does not satisfy any of these requirements.

19      **A.   Google Did Not Violate The Material Support Laws Or IEEPA**

20      First, the TAC does not plausibly allege that Google violated any of the criminal statutes

21  that Plaintiffs invoke. This alone is sufficient to dismiss any claim under the ATA.

22          **1.   Plaintiffs Cannot Satisfy The Scienter Requirements For Any Of The**

23              **Criminal Statutes They Have Invoked**

24      In the SAC, Plaintiffs based their ATA claims on two related criminal statutes that

25  prohibit material support for terrorism, 18 U.S.C. §§ 2339A and 2339B. Google explained in its

26  prior motion to dismiss that Plaintiffs fail to state a claim under those provisions. Dkt. 100 at 17-

27  25. That remains true for the version of those claims that is repeated in the TAC (*see* ¶¶ 573-

28

585), as well as for Plaintiffs two new claims (under IEEPA and for "concealment" of material support under 2339C(c)).

Section 2339B requires a showing that the defendant "knowingly provided" material support to a designated foreign terrorist organization. 18 U.S.C. § 2339B. The Supreme Court has read this provision narrowly, as requiring support given "under the direction of, or in coordination with foreign groups that the speaker knows to be terrorist organizations." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 26 (2010); *accord Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury*, 686 F.3d 965, 996 (9th Cir. 2012); *see also Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 208 (2d Cir. 2014) ("[T]o fulfill § 2339B(a)(1)'s scienter requirement, … Plaintiffs must show that NatWest both knew that it was providing material support to Interpal *and* knew that Interpal engaged in terrorist activity." (emphasis added)). As in the SAC, however, Plaintiffs come nowhere close to meeting this standard. *See* Motion to Dismiss SAC (Dkt. 100) at 19; Reply ISO Motion to Dismiss SAC (Dkt. 102) at 11-13. The TAC contains no facts that plausibly could establish that Google *knowingly* opened YouTube accounts for users that it actually knew to be a part of ISIS. All Plaintiffs offer are general allegations that Google could possibly have done more to identify and prevent users from posting content in violation of its policies. TAC ¶¶ 20, 491, 493. This is not enough. Plaintiffs' failure to establish a material support offense bars both their concealment claim (Count V) and their ATA claim that is directly predicated on Section 2339B (Count IV).

For the same reason, Plaintiffs also fail to state a claim based on Section 2339A (Count III), which has an even more stringent scienter requirement: that the material support was provided "knowing or intending" that it be used "in preparation for, or in carrying out" a terrorist act. 18 U.S.C. § 2339A(a). This statute requires specific knowledge or intent. *See United States v. Stewart*, 590 F.3d 93, 113 (2d Cir. 2009); *see also Ahmad v. Christian Friends of Israeli Cmtys.*, 2014 U.S. Dist. LEXIS 62053, at *7-12 (S.D.N.Y. May 5, 2014) (dismissing ATA claim where complaint "allege[d] no facts suggesting that Defendants were aware—or even deliberately indifferent to the possibility—that the financial support they provided to 'the Settlers' would be used to support any violent activity"), *aff'd*, 600 F. App'x 800 (2d Cir. 2015).

1   Nothing in the TAC supports such an allegation. Plaintiffs' threadbare recitals of the statutory

2   elements (TAC ¶¶ 574-577) are not enough. *See Iqbal*, 556 U.S. at 678. The TAC contains no

3   factual allegations to support a claim that Google provided its services to any of its users with the

4   knowledge or intent that its services be used to carry out acts of terrorism, and no such allegation

5   could be made consistent with Rule 11.

6         Plaintiffs' two new claims suffer from the same problem. These criminal statutes both

7   have strict *mens rea* requirements, which the TAC does not come close to satisfying. A criminal

8   violation of IEEPA requires an especially high degree of culpability—namely, that defendant

9   acted *willfully*. *See* 50 U.S.C. § 1705(c); *accord United States v. Zhi Yong Guo*, 634 F.3d 1119,

10  1123 (9th Cir. 2011) (a "willful" violation of 50 U.S.C. § 1705(a) requires that the defendant

11  knew his conduct was unlawful and "intended to violate the law"). Plaintiffs allege nothing that

12  could even remotely meet this standard. While the TAC recites the elements of the statute (TAC

13  ¶ 592), it does not include a single allegation that Google intended to violate the law. And the

14  TAC certainly does not offer any actual factual allegations that could support such an inference.

15  In short, Plaintiffs do not even try to allege the kind of willful misconduct required for a criminal

16  violation of IEEPA. Nor could they.

17        Plaintiffs' new claim for concealment is equally deficient. To begin with, this claim fails

18  because, as discussed above, it is predicated on an underlying alleged act of material support by

19  Google in violation of § 2339B (TAC ¶ 587). Plaintiffs' failure to allege a viable claim directly

20  under Section 2339B also dooms their claim under Section 2339C(c). Beyond that, Plaintiffs fail

21  to allege knowing concealment by Google. To violate Section 2339C(c), a defendant must

22  "*knowingly* conceal" its provision of material support or resources (§ 2339C(c)(2)), while also

23  "*knowing* that the support or resources were provided" to a designated terrorist organization, "in

24  violation of section 2339B" (§ 2339C(c)(2)(A)). There is nothing like that alleged here. All

25  Plaintiffs offer are wholly conclusory assertions that Google "knowingly" provided service to

26  ISIS and "purposely refrained" from providing notice to the government about supposed

27  activities by ISIS on YouTube. *E.g.*, TAC ¶¶ 201-202, 513. These are just the kind of

28  "[t]hreadbare recitals" not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Plaintiffs

1  make no factual allegation that Google knew that certain users were part of ISIS but then decided

2  to allow them to keep posting content on YouTube, much less that it knowingly *concealed* that

3  fact. Instead, the TAC alleges that YouTube's policies prohibit terrorist content from appearing

4  on the platform, but that those policies are not always perfectly enforced. TAC ¶ 200. Even if

5  they fall short of perfection, the adoption and enforcement of these policies are the antithesis of

6  knowingly concealing material support for a terrorist organization.

7  The same is true of Plaintiffs' sparse allegations regarding YouTube's sign-up process.

8  These allegations describe information that users provide when registering for an account,

9  including a name, telephone number, email address, and approximate geographic location. TAC

10  ¶¶ 167-168, 170-172. Plaintiffs nowhere allege that this information reasonably could give

11  Google knowledge of a user's connection to ISIS or that it ever actually did so. To the contrary,

12  the TAC admits that users sometimes use "technological masking or deceptive means to disguise

13  the user's physical location." TAC ¶¶ 170-171. Simply put, Plaintiffs do not allege that Google

14  ever permitted a user to sign up for YouTube while knowing the user was connected to ISIS.

15  And there is nothing even resembling an allegation that Google *knowingly concealed* any

16  situation where that happened.

17  Because Plaintiffs have not alleged (and could not allege) any facts that plausibly support

18  a showing that YouTube "knowingly" or "willfully" provided support to ISIS, or "knowingly"

19  concealed such support, their claims must be dismissed.

20  **2.      Plaintiffs Have Not Alleged That Google Unlawfully Concealed An Act**

21  **Of Material Support**

22  There is an additional problem with Plaintiffs' new claim under Section 2339C(c). Even

23  if credited, the theory suggested by the TAC simply would not amount to an act of unlawful

24  concealment under this statute. Section 2339C(c) requires an affirmative act to "conceal[] or

25  disguise[] the nature, location, source, ownership, or control of any material support or

26  resources." 18 U.S.C. § 2339C(c). This involves something akin to money laundering, that is,

27  taking deliberate steps to shield known instances of material support for a foreign terrorist

28  organization from the attention of law enforcement. *See, e.g.*, *Ranjha v. Dep't of Homeland Sec.*,

1   2011 U.S. Dist. LEXIS 66268, at *4-5 (E.D. Va. June 7, 2011) (indictment charging criminal

2   defendant with violation of § 2339C(c)(1)(A) based on alleged laundering of money that

3   defendant "believed was to be used by the global terrorist organization al Qaeda"); *United States*

4   *v. Sattar*, 314 F. Supp. 2d 279, 300 n.10 (S.D.N.Y. 2004) (explaining terms "concealed and

5   disguised" in § 2339A "have ordinary and obvious meanings," which encompass alleged acts to

6   disguise terrorist conspirator as "simply a prisoner complying with his SAMs").

7       Nothing like that is alleged in the TAC. As discussed above, Plaintiffs' "concealment"

8   claim is perversely based on the policies YouTube has in place to prohibit terrorists from using

9   its service and the efforts it makes to enforce those policies. The idea seems to be that these

10  activities somehow conceal situations where ISIS has managed to post content on YouTube.

11  TAC ¶ 200. This is not a viable theory under Section 2339C(c). Providing an online service that

12  is open to the public—and allegedly failing to remove certain publicly available content from

13  that service—cannot amount to the unlawful *concealment* of material support. Under no

14  plausible construction of the statute is ISIS-related content that YouTube might fail to detect or

15  remove "concealed" by Google. There certainly is no allegation that Google takes any

16  affirmative steps to prevent such material from being discovered by law enforcement or

17  otherwise does anything to disguise ISIS-related activity that purportedly occurs on YouTube.

18      Beyond being unsupported by the statute or any authority, Plaintiffs' theory would have

19  pernicious consequences. Online services should not be subjected to potential criminal liability

20  based on their promulgation of rules banning terrorist content. That would deter the development

21  and enforcement of content policies that help protect users and the public from objectionable

22  content. Plaintiffs' effort to pervert Section 2339C(c) should be rejected out of hand.

23      **B.**    **Plaintiffs Fail To Allege That Google Committed An "Act Of International**

24          **Terrorism" Under Section 2333(a)**

25      Even if the TAC had actually alleged a violation of the criminal statutes that Plaintiffs

26  invoke, more would be required to state a viable claim under the ATA. Plaintiffs would also have

27  to show that Google itself committed an "act of international terrorism" (18 U.S.C.§ 2333(a)),

28  which requires "violent" or "dangerous" acts that "appear[ed] to be intended" to achieve a

specifically-defined terrorist purpose (*id.* § 2331(1)(A), (B)). *Brill v. Chevron Corp.*, 2017 U.S. Dist. LEXIS 4132, at *17-18 (N.D. Cal. Jan. 9, 2017) (explaining that "§ 2331(1)(B) needs to be met in its own right as a required element of 'international terrorism'").

Plaintiffs do not even try to explain how, if Google actually violated the material support laws or IEEPA, its conduct would meet the requirements for acts of international terrorism. Plaintiffs do not (and cannot) allege that Google itself committed the attack in Paris on November 13, 2015. Instead, as alleged in the TAC, Google's conduct consists of owning, developing, and operating the YouTube platform, including the development and enforcement of policies, and the provision of various functions for users to post, share, and communicate about user-uploaded videos. *E.g.*, TAC ¶¶ 154, 164, 175, 179, 182-184, 200, 515, 520. As before, Plaintiffs do not, and cannot, allege that this conduct is itself violent or dangerous. The fact that individuals associated with ISIS might sometimes use YouTube (in violation of its rules) does not transform the operation of that service into unlawful, violent, or dangerous terrorist activity. *See, e.g.*, *Stutts v. De Dietrich Grp.*, 2006 U.S. Dist. LEXIS 47638, at *2 (E.D.N.Y. June 30, 2006) (engaging in commercial banking activity does not constitute "violent acts or acts dangerous to human life").

Likewise, there is no basis for concluding that Google's conduct in operating YouTube was intended to accomplish one of the terrorist ends set out in § 2331(1)(B). *See, e.g.*, *Stansell v. BGP, Inc.*, 2011 U.S. Dist. LEXIS 39808, at *26 (M.D. Fla. Mar. 31, 2011) (dismissing ATA claim where plaintiff failed to offer allegations that would "lead an objective observer to conclude" that the defendant's conduct was intended to achieve one of the ends set out in § 2331(1)(B)); *see also Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *15 (where allegations fail to establish Defendants' knowledge that alleged support would be used to aid terrorist activity, "it follows *a fortiori* that the allegations are insufficient to establish that Defendants intended for their funds to be used in such a manner").

These problems are particularly acute for Plaintiffs' new concealment claim. It is hard to see how concealment, by itself, could possibly amount to a "violent" or "dangerous" act, or one that "appear[s] to be intended" to further terrorism. And Plaintiffs make no effort to explain how

1   Google's supposed act of concealment—its promulgation of its policies prohibiting terrorist

2   content on YouTube and its enforcement of those rules—meets those requirements. If anything,

3   the TAC alleges the opposite—that Google's conduct "appear[s] as if Google is complying with"

4   U.S. and international laws. TAC ¶¶ 200, 510. Even if Plaintiffs' theory were credited, and

5   Google was making only token efforts in this regard, as a matter of law those efforts could not

6   and would not amount to an "act of international terrorism" warranting civil liability under the

7   ATA.

8        In short, offering a general service to millions of people worldwide does not become an

9   "act of international terrorism" under the ATA merely because terrorists may be among those

10   who try to use it. *Accord Burnett II*, 349 F. Supp. 2d at 832-33 (dismissing ATA claim premised

11   on theory that bank is liable for facilitating "deposits, withdrawals, check clearing services, or

12   any other routine banking service" (citation omitted)).

### C.   Plaintiffs Fail To Plausibly Allege Proximate Cause

14        Beyond all this, Plaintiffs' claims also fail because the TAC does not plausibly allege that

15   Google's alleged wrongdoing "proximately caused" Plaintiffs' injuries. *See In re Terrorist*

16   *Attacks on Sept. 11, 2001* (*Al Rajhi Bank*), 714 F.3d 118, 123-125 (2d Cir. 2013); *Rothstein*, 708

17   F.3d at 95-97.

18        Section 2333(a)'s "by reason of" language incorporates a proximate cause standard that

19   requires a close causal connection: that the defendants' actions "led directly" to Plaintiffs'

20   injuries. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *accord Brill*, 2017 U.S.

21   Dist. LEXIS 4132, at *20 ("[T]he proximate causation standard articulated by the Second Circuit

22   in *Rothstein* … is well-reasoned and compelling, and the Court applies it here."); *Ofisi v. BNP*

23   *Paribas, S.A.*, 2017 U.S. Dist. LEXIS 160648, at *17 (D.D.C. Sept. 29, 2017) ("§ 2333 requires

24   a showing of proximate cause as that 'term is typically defined'"—"'requir[ing] a *direct relation*

25   between conduct alleged and injury asserted'"). As explained in Google's previous motion to

26   dismiss in this case (Dkt. 100 at 23-25), and as Judge Orrick held in dismissing parallel claims

27   against Twitter in *Fields*, Plaintiffs' claims rely on a causal connection that is far "too

28   speculative or attenuated to raise a plausible inference of proximate causation." *Fields v. Twitter,*

1   *Inc.* (*Fields I*), 200 F. Supp. 3d 964, 974 n.4 (N.D. Cal. 2016); *see also Fields II*, 217 F. Supp. 3d

2   at 1127 n.3; *Pennie*, 2017 U.S. Dist. LEXIS 199250, at *32-34.

3        The TAC offers nothing new in this regard. Plaintiffs' causation theory remains entirely

4   attenuated and speculative: (1) Google failed to adequately monitor YouTube to "block ISIS's

5   use of Google's Platform and Services" (TAC ¶ 491); (2) Google failed to block content

6   allegedly designed to spread propaganda, issue threats, and recruit new members (TAC ¶¶ 185-

7   298, 489-494); (3) some unspecified individuals who viewed that content allegedly responded by

8   joining and supporting ISIS (TAC ¶¶ 240-241); (4) these recruits helped ISIS to grow into a

9   larger terrorist organization (TAC ¶ 248); (5) viewing alleged terrorist content inspired certain

10  individuals to commit the attack in Paris (TAC ¶¶ 349, 362). This theory would hold an

11  otherwise neutral online service provider liable for every act of terrorism committed by a

12  designated terrorist organization solely because some unidentified members of that organization

13  may have used the service. No court has ever endorsed such an expansive approach.

14       To the contrary, Judge Orrick and Magistrate Judge Spero both declined to stretch the

15  ATA so far in cases asserting similarly attenuated claims of causation. *See Fields II*, 217 F.

16  Supp. 3d at 1127; *Pennie*, 2017 U.S. Dist. LEXIS 199250, at *31-33; *accord Ahmad*, 2014 U.S.

17  Dist. LEXIS 62053, at *13-14 (allegations that Defendants "transferred funds to an unorganized

18  group of approximately five hundred thousand people, and that some people in that group

19  committed attacks against the American Plaintiffs … are not even sufficient to show but-for

20  causation, let alone the more demanding standard of proximate causation" (citation omitted)).

21  This Court should do likewise.

22  **III.   PLAINTIFFS' CONCLUSORY ALLEGATIONS OF REVENUE SHARING**

23  **CANNOT OVERCOME THIS COURT'S RULING**

24       Finally, Plaintiffs cannot salvage their claims by pointing to their baseless theory that

25  Google shared revenue with ISIS. Plaintiffs' revenue-sharing allegations purport to be in support

26  of their claims that Google provided material support to ISIS under Section 2339A, Section

27  2339B, and/or IEEPA and thereby committed an "act of international terrorism" under the ATA.

28  TAC ¶¶ 533, 573-585, 591-594. As discussed above, however, these statutes have strict

1   requirements for both scienter and causation. Plaintiffs cannot satisfy those requirements with

2   conclusory assertions about revenue sharing that are unsupported by actual factual allegations.

3        The Court already rejected the version of Plaintiff's revenue-sharing theory that was

4   advanced in connection with the SAC. *See* MTD Ruling at 26. This theory was based on a single

5   video for which Google was supposed to have shared revenue with ISIS. SAC ¶ 458. As the

6   Court explained, "there is no allegation that any revenue was actually shared with the user who

7   posted the video. There also is no allegation that the user who uploaded the video is a member of

8   ISIS, and no allegations connecting alleged revenue sharing with the Paris attacks." MTD Ruling

9   at 26; *see also Pennie*, 2017 U.S. Dist. LEXIS 199250, at *27-33 (rejecting similar revenue-

10  sharing allegations "for failure to establish that any purported 'support' provided to Hamas was a

11  substantial factor leading to the Dallas shooting").

12       Plaintiffs' response to the Court's Order is paltry. The TAC does not allege a single new

13  concrete fact to support Plaintiffs' revenue-sharing theory. Plaintiffs have not identified any new

14  YouTube videos for which revenue was supposedly shared with ISIS. Instead, they simply repeat

15  the same allegations about Google's general revenue sharing program (TAC ¶¶ 522-524, 532),

16  including the same screenshot of the same video that has appeared in every prior version of their

17  complaint (TAC ¶ 533). In each of their previous three complaints, Plaintiffs identified this video

18  generally as an "ISIS video" (SAC ¶ 458; *accord* Compl. (Dkt. 1) ¶ 103; FAC ¶ 118)—a notably

19  vague description that left open the possibility that it was a video *about* ISIS or generally *in*

20  *support of* ISIS, rather than one actually created and uploaded by ISIS. In the TAC, 18 months

21  into this litigation, Plaintiffs now offer—*for the very first time*—the unadorned conclusion that

22  "[t]he video was created by ISIS and was posted by ISIS using a known ISIS account." TAC

23  ¶ 533. Plaintiffs similarly offer, also for the first time, the equally conclusory assertion that

24  "YouTube shared revenue with ISIS, the creator and poster of the video." *Id*.

25       These new allegations are not enough to get around this Court's ruling. Plaintiffs do not

26  plead a single fact to support the bare assertions that they have added to the TAC. There are no

27  concrete facts alleged in the TAC from which it could plausibly be inferred that the one video at

28  issue was actually created by ISIS, much less that ISIS itself posted the video to YouTube using

an account that has some connection to ISIS. Indeed, the TAC does not even identify the account in question, much less explain what reason there is to believe that this account was affiliated with ISIS. All that Plaintiffs can offer are threadbare legal conclusions that appear to have been manufactured from thin air. That is not enough to state a viable claim under the ATA. *Iqbal*, 556 U.S. at 678. To the contrary, Plaintiffs' token response to this Court's ruling confirms that they have no actual facts to connect the posting of this video to ISIS itself.

But even crediting Plaintiffs' bare allegation that the video was posted by ISIS, the TAC still would fall short. As discussed above, a claim for violation of the material support laws (or IEEPA) would require an actual allegation that Google knew that the video in question had been posted by ISIS and deliberately shared revenue with the uploader anyway. But despite Plaintiffs' apparent willingness to advance unsupported conclusions, it is telling that they do not offer even a conclusory allegation of Google's knowledge. Plaintiffs instead make the cryptic allegation that the account at issue was a "known ISIS account." TAC ¶ 533. It is not clear what that means (and the TAC nowhere explains or supports it), but it is not an allegation that Google itself knew that the user with whom it allegedly sharing revenue was ISIS itself. Thus, even assuming that Google shared revenue for this video, and even assuming that the uploader "was ISIS," Plaintiffs do not allege that Google *knowingly* (much less *willfully*) shared revenue with ISIS. Without that, there can be no criminal violation—and no ATA claim.

Beyond all that, Plaintiffs also allege no facts that plausibly suggest that Google's supposed revenue sharing in connection with this one video had any causal connection to the Paris attack. To the contrary, Plaintiffs disclaim any such suggestion. TAC ¶ 533. Their theory instead is that if even a single dollar of revenue is shared with a terrorist group, no matter the circumstances, the service provider that shared such revenue can be said to have proximately caused any and all terrorist acts that the group commits at any time thereafter. No court has ever endorsed the kind of wildly expansive approach to causation that Plaintiffs advance here. If the

1   requirement of proximate cause has any meaning, Plaintiffs theory must be rejected. *Accord*

2   *Brill*, 2017 U.S. Dist. LEXIS 4132, at \*20; *Ahmad*, 2014 U.S. Dist. LEXIS 62053, at \*13-14.[3]

3                                   **CONCLUSION**

4          For all these reasons, the TAC is barred by Section 230 and fails to state a claim under

5   the ATA. Because any further amendments would be just as futile as Plaintiffs' four prior

6   attempts, dismissal should be with prejudice. *See, e.g.*, *In re Gardner*, 563 F.3d 981, 990 (9th

7   Cir. 2009).

8

9

10

11

12

13

14

15

16

17

18

19

20
_____

21          [3] While the Court need not reach this issue in light of Plaintiffs' failure to state a claim, any
    alleged violation of the ATA based on Google's general revenue-sharing program is also barred
22   by Section 230. Sharing revenue with content creators is hardly unusual: indeed, it is something
    publishers have done for as long as they have existed. *Accord Chodos v. W. Publ'g Co.*, 292 F.3d
23   992, 995 (9th Cir. 2002) (describing standard publishing contract as providing for revenue-
    sharing by publisher to encourage publication). And nothing that Plaintiffs allege takes
24   YouTube's broad-based revenue-sharing program outside this established paradigm. As such,
    Plaintiffs seek to impose liability on Google for activity directly connected to its "status or
25   conduct as a publisher"—exactly what Section 230 forbids. *Barnes*, 570 F.3d at 1102; *accord
    Evans v. Hewlett-Packard Co.*, 2013 U.S. Dist. LEXIS 146989, at \*12-14 (N.D. Cal. Oct. 10,
26   2013) (Section 230 applied to provider that shared profits with creator of allegedly infringing
    app); *Nasser v. Whitepages, Inc.*, 2013 U.S. Dist. LEXIS 166133, at \*10 (W.D. Va. Nov. 22,
27   2013) (Section 230 applied to WhitePages notwithstanding paid agreements with third-party data
    providers).

28

1    Dated:  December 20, 2017                   WILSON SONSINI GOODRICH & ROSATI
                                                 Professional Corporation
2

3                                                /s/ *Brian M. Willen*
                                                 BRIAN M. WILLEN (*pro hac vice*)
4                                                bwillen@wsgr.com
                                                 WILSON SONSINI
5                                                   GOODRICH & ROSATI, P.C.
                                                 1301 Avenue of the Americas
6                                                New York, New York 10019
                                                 Telephone:     (212) 999-5800
7                                                Facsimile:     (212) 999-5899
8

9                                                DAVID H. KRAMER (CA SBN 168452)
                                                 dkramer@wsgr.com
10                                               LAUREN GALLO WHITE (CA SBN 309075)
                                                 lwhite@wsgr.com
11                                               WILSON SONSINI
                                                   GOODRICH & ROSATI, P.C.
12                                               650 Page Mill Road
                                                 Palo Alto, California 94304
13                                               Telephone:     (650) 493-9300
                                                 Facsimile:     (650) 565-5100
14

15                                               ***Attorneys for Defendant***
                                                 **GOOGLE LLC**
16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2

     I hereby certify that on December 20, 2017, I electronically filed the above document

3

with the Clerk of the Court using CM/ECF which will send electronic notification of such filing

4

to all registered counsel.

5

6

                  By:  <u>/s/ Brian M. Willen</u>

7

                      Brian M. Willen

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28