UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REYNALDO GONZALEZ, et al.,

        Plaintiffs,

      v.

GOOGLE, INC.,

        Defendant.

Case No. 16-cv-03282-DMR

**ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Re: Dkt. No. 116

Nohemi Gonzalez was murdered during the November 2015 attacks in Paris committed by terrorists associated with the Islamic State of Iraq and Syria ("ISIS"). Plaintiffs are Gonzalez's surviving family members, including her mother, father, stepfather, and brothers. They seek to hold Defendant Google, Inc. ("Google") liable for her death under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, based on Google's ownership and operation of YouTube. In their third amended complaint, Plaintiffs contend that Google has knowingly provided material support to ISIS in the form of its YouTube platform, that ISIS has used YouTube as a tool to commit terrorism, and that Google has concealed its provision of material support to ISIS. According to Plaintiffs, Google's material support was a proximate cause of Gonzalez's death.

The court previously dismissed Plaintiffs' second amended complaint on the ground that their claims were barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), which protects online service providers from liability for material posted on a provider's website by others. *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150 (N.D. Cal. 2017). Plaintiffs filed a third amended complaint in which they re-allege the same four claims that the court previously found were barred by the CDA, and add two new claims for relief. Google again moves to dismiss. [Docket No. 116.]

The court vacated the hearing at the parties' request. [Docket Nos. 122, 124.] The court

subsequently ordered Plaintiffs to file a supplemental brief addressing the impact of *Fields v. Twitter*, 881 F.3d 739 (9th Cir. 2018), which the Ninth Circuit issued after Plaintiffs filed their opposition brief. [Docket No. 124.] Plaintiffs timely filed the supplemental brief. [Docket No. 126.] The court finds this matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, Google's motion is granted.

## I.    BACKGROUND

Plaintiffs make the following allegations in the third amended complaint ("TAC"), all of which are taken as true for purposes of this motion.[1] [Docket No. 111.] In the fall of 2015, Nohemi Gonzalez was a 26-year old California State University student studying abroad in Paris, France. [Docket No. 111 (TAC) ¶ 471.] On November 13, 2015, Gonzalez was dining with a group of friends at La Belle Équipe, a Paris bistro. A few minutes into their meal, three ISIS terrorists, Abdelhamid Abaaoud, Brahim Abdeslam, and Chakib Akrouh, approached the restaurant and began spraying the patrons with bullets, killing Gonzalez and 18 others. *Id.* at ¶¶ 475-477. Two other groups of ISIS terrorists mounted coordinated attacks that night at other locations in Paris, including the Stade de France and the Bataclan Theatre concert hall. They eventually killed 130 individuals and wounded nearly 400. *Id.* at ¶¶ 299, 305, 405-435. ISIS issued statements claiming responsibility for the attacks, including audio and video messages posted on YouTube, a free online video platform owned and operated by Google. *Id.* at ¶¶ 154, 179, 436-470. Plaintiffs allege that twelve individual ISIS terrorists were directly involved in the Paris attacks, including the three La Belle Équipe shooters. *Id.* at ¶ 306.

The TAC describes in detail the origins of ISIS, which is a designated foreign terrorist organization ("FTO") under the Immigration and Nationality Act, 8 U.S.C. § 1189. *Id.* at ¶¶ 82-153. It adds allegations about terrorist attacks in the 1980s, 1990s, and the September 11, 2001 attacks in the United States, and the evolution of anti-terrorism legislation that followed these attacks. *Id.* at ¶¶ 34-81. Plaintiffs allege that YouTube "has played an essential role in the rise of

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

ISIS to become the most feared terrorist organization in the world." *Id*. at ¶ 185. YouTube provides ISIS with a "unique and powerful tool of communication" that enables it to achieve its program of terrorism and motivate others to carry out more terrorist attacks. *Id*. at ¶ 192; *see also id*. at ¶¶ 186-91, 193. Plaintiffs contend that ISIS uses YouTube as a means to accomplish many of its goals:

> ISIS not only uses YouTube for recruiting, planning, inciting, and giving instructions for terror attacks, ISIS also uses YouTube to issue terroristic threats, attract attention to its terror attacks and atrocities, instill and intensify fear from terror attacks, intimidate and coerce civilian populations, take credit for terror attacks, communicate its desired messages about the terror attacks, reach its desired audiences, demand and attempt to obtain results from the terror attacks, and influence and affect government policies and conduct.

*Id*. at ¶ 194; *see also id*. at ¶¶ 195-96, 225. Plaintiffs identify and describe a number of videos that allegedly were posted on YouTube at the direction of individuals affiliated with ISIS, including gruesome depictions of executions of ISIS prisoners. *See id*. at ¶¶ 126-128, 143-45, 227, 230, 243, 245-47, 259-81. According to Plaintiffs, ISIS has recruited more than 30,000 foreign volunteers since 2014 through its use of YouTube and other social media platforms. *Id*. at ¶ 248.

The TAC details the planning and execution of the Paris attacks. *Id*. at ¶¶ 299-435. Plaintiffs allege that "a major component of the Paris Attack was the messaging disseminated by ISIS prior to, during, and after the events," and that the planning for the attacks "involved the use of YouTube, before and after the attack, to intensify the fear and intimidation that ISIS intended to inflict by this mass casualty attack." *Id*. at ¶¶ 301-303. According to Plaintiffs, ISIS used YouTube's platform and services to "facilitate and accomplish" the goals of the attacks— intimidation, coercion, and influence. *Id*. at ¶¶ 300-304. Of the twelve ISIS terrorists who carried out the attacks, Plaintiffs allege that two, Abaaoud and Najim Laachraoui, used online social media platforms to post alleged terrorist recruiting videos. *Id*. at ¶¶ 355-58, 362. Specifically, Plaintiffs allege that in March 2014, Abaaoud "posted a link on his Facebook account to an ISIS recruiting video on YouTube," and that Laachraoui "actively followed ISIS social media accounts and posted links to *jihadi* YouTube videos on his own accounts as well." *Id*. at ¶¶ 356-58, 362.

The TAC also contains allegations about the operation of the YouTube platform.

1    Registered users may establish a YouTube "channel," post videos on the platform, and post

2    comments on the pages of YouTube channels and videos.  *Id*. at ¶ 163.  When a YouTube user

3    posts a video, "Google's computer servers receive the information and distribute it to the YouTube

4    user's network of YouTube channel 'subscribers.'"  *Id*. at ¶ 543.  The TAC adds allegations that

5    YouTube "assists ISIS in spreading its message" by recommending ISIS videos to users "based

6    upon the content and what is known about the viewer."  *Id*. at ¶ 535.  Google employs algorithms

7    to help users locate other videos and accounts with similarities, "introducing users to other users

8    and videos that they will be interested in based on the video and account information and

9    characteristics."  *Id*. at ¶¶ 549-50.  "[I]n this way, users are able to locate other videos and

10   accounts related to ISIS even if they do not know the correct identifier or if the original YouTube

11   account has been replaced by a new identifier."  *Id*. at ¶ 549.  Plaintiffs further allege that

12   YouTube is "useful[] in facilitating social networking among jihadists," since it provides the

13   "ability to exchange comments about videos and to send private messages to other users,"

14   enabling jihadists to rapidly identify each other.  *Id*. at ¶ 553.

15        Plaintiffs further allege that Google derives revenue from ads on YouTube.  According to

16   Plaintiffs, Google targets ads to the viewer "based upon algorithms that analyze and use data about

17   the ads, the user, and the video posted.  *Id*. at ¶ 520.  Google "agrees to share[] a percentage of the

18   revenue it generates from ads placed before YouTube videos with the user who posts the video."

19   *Id*. at ¶ 532.  Plaintiffs allege upon information and belief that "Google has reviewed and approved

20   ISIS videos, including videos posted by ISIS-affiliated users, for 'monetization' through" its

21   placement of ads with these videos," and that by approving such videos, "Google has agreed to

22   share with ISIS and ISIS-affiliated users a percentage of revenues generated by these ads."  *Id*. at

23   ¶¶ 521-22.  The TAC includes a screen shot of an example of Google-placed targeted ads

24   alongside what Plaintiffs describe as "an ISIS video" on YouTube.  *Id*. at ¶ 533.  Plaintiffs allege

25   that "[t]he video was created by ISIS and was posted by ISIS using a known ISIS account."  *Id*.

26   They further allege upon information and belief that "the poster complied with YouTube's terms

27   and conditions, as did YouTube.  Thus, YouTube shared revenue with ISIS, the creator and poster

28   of the video[.]"  *Id*.

Plaintiffs also allege that Google is a "content creator." While admitting that Google does not make the videos that are posted on YouTube, Plaintiffs allege that Google creates "new unique content" for viewers "by choosing which advertisement to combine with the posted video with knowledge about the viewer." *Id.* at ¶ 540. In that way, "Google is not simply passing along content created by third parties"; instead, "Google incorporates ISIS posted videos along with advertisements matched to the viewer to create new content for which Google earns revenue[.]" *Id.* at ¶ 541; *see also id.* at ¶ 536 ("Google is itself creating and developing content because it exercises control over what advertisement to match with an ISIS video posting on YouTube."). Plaintiffs further allege that "Google has recommended ISIS videos to users," assisting ISIS "in spreading its message." *Id.* at ¶ 535.

Plaintiffs allege that Google has the ability to deny its YouTube-related services to ISIS, but refuses to do so. Although Google has suspended or blocked certain ISIS-related accounts at various times, prior to the Paris attacks, Google did not make "substantial or sustained efforts to ensure that ISIS would not re-establish the accounts using new identifiers." *Id.* at ¶ 493. Even though Google has tools to identify, flag, review, and remove ISIS YouTube accounts, it allows such accounts "to be quickly regenerated." *Id.* at ¶¶ 554-55.

Finally, the TAC adds allegations that "Google's own terms and policies ostensibly bar ISIS and other foreign terrorist organizations . . . from using Google[.]" *Id.* at ¶ 200. However, Plaintiffs allege, "Google has nevertheless knowingly provided its Platform and Services to ISIS, its members and affiliates[.]" *Id.* at ¶ 201. Thus, "by falsely representing that it does not permit ISIS" to use YouTube "when in fact it has knowingly continued to provide its Platform, Services and accounts to ISIS, Google has concealed and disguised the nature, location, source, or ownership of material support or resources, knowing that they are used in preparation for, or in carrying out, criminal terrorist activity." *Id.* at ¶¶ 201-02.

Based on these allegations, Plaintiffs contend that Google violated federal prohibitions by providing material support or resources for acts of international terrorism. As in the second amended complaint ("SAC"), Plaintiffs bring four claims for relief under the ATA's civil remedy provisions, 18 U.S.C. § 2333(a) and (d). Section 2333(a) provides for a private right of action for

damages sustained in an act of international terrorism:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a). Section 2333(d) provides that liability attaches to those who aid or abet an act of international terrorism by knowingly providing substantial assistance:

> In an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization . . . liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

18 U.S.C. § 2333(d).

Plaintiffs' first and second claims for relief assert that Google is liable for aiding and abetting acts of international terrorism under section 2333(d) because it "knowingly provided substantial assistance" to ISIS and "conspired with ISIS." TAC ¶¶ 565, 570-71. The third claim for relief asserts that Google is liable under section 2333(a) for providing ISIS with "material support and resources" in violation of 18 U.S.C. § 2339A, a federal criminal statute which prohibits the provision of "material support or resources" to terrorists in the form of services, equipment, and personnel. *Id*. at ¶¶ 574-78. The fourth claim asserts that Google is liable under section 2333(a) based on its violation of 18 U.S.C. § 2339B(a)(1), which criminalizes the knowing provision of "material support or resources to a foreign terrorist organization." Plaintiffs contend that Google violates section 2339B(a)(1) by "providing its Platform and Services, including the YouTube platform and other services . . . to and for the benefit of ISIS[.]" *Id*. at ¶¶ 581-84.

The TAC adds a separate basis for claims three and four, based upon Plaintiffs' allegation that Google violated the ATA by knowingly sharing advertising revenue with ISIS. They allege the provision of advertising revenue to ISIS itself constitutes material support in violation of sections 2339A and 2339B. *See* TAC ¶ 533.[2]

---

[2] For purposes of clarity, the court will refer to the parts of claims three and four that are based upon the alleged sharing of advertising revenue with ISIS as the "revenue sharing claims."

The TAC adds two additional claims for relief, both of which seek redress under section 2333(a). The fifth claim is for concealment of material support and resources to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339C(c). *Id*. at ¶¶ 587-88. Section 2339C(c) prohibits the knowing concealment or disguise of "the nature, location, source, ownership, or control of any material support or resources, or any funds or proceeds of such funds . . . knowing or intending that the support or resources are to be provided, or knowing that the support or resources were provided," in violation of 18 U.S.C. § 2339B.

The sixth claim alleges that Google provides funds, goods, or services to ISIS in violation of terrorism sanctions regulations issued pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, 31 C.F.R. Part 594. *Id*. at ¶ 592.

Google moves to dismiss all of Plaintiffs' claims on the ground that Section 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230(c)(1), bars any claim that seeks to hold an online service provider liable for injuries allegedly resulting from its hosting of third-party material. It also argues that all of Plaintiffs' claims are insufficiently pleaded.

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286

(1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## III.    DISCUSSION

The court dismissed the SAC because all of Plaintiffs' claims fell within the scope of CDA's immunity provision, 47 U.S.C. § 230(c)(1), which "immunizes providers of interactive computer services against liability arising from content created by third parties." *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). Specifically, the court held that section 230(c)(1) foreclosed any effort by Plaintiffs to impose liability on Google for Nohemi Gonzalez's death based on Google's alleged failure to prevent ISIS and its followers from posting videos on YouTube. *See* Gonzalez, 282 F. Supp. 3d at 1165-66.

As noted, the TAC re-alleges four claims that are identical or nearly identical to the claims the court already dismissed (claims one through four), and adds a new theory supporting claims three and four based upon Google's alleged revenue sharing with ISIS. The TAC also adds new claims for concealment of material support and for violation of terrorism sanctions regulations (claims five and six). Google maintains that section 230(c)(1) blocks all of Plaintiffs' claims. It asserts that the court's ruling on the motion to dismiss the SAC applies fully to claims one through four, and that Plaintiffs' new claims for concealment of material support and violation of terrorism sanctions regulations "are equally barred by Section 230[(c)(1)]." Mot. 9. According to Google, claims five and six rest on the same theory as claims one through four: "that Google's purported failure to remove certain content and users from YouTube renders Google liable for ISIS's terrorist attack in Paris." Mot. 6. Google also moves to dismiss the TAC on the ground that Plaintiffs have not stated claims under the applicable statutes, including failing to plausibly allege proximate cause.

Plaintiffs contend that none of the claims alleged in the TAC are barred by section 230(c)(1). They also argue that each of their claims is sufficiently pleaded.[3]

---

[3] Plaintiffs appear to ask the court to take judicial notice of three exhibits attached to their opposition brief. Opp'n Exs. A-C; *see* Opp'n 3 n.3, 4 n.4, 5 n.6. Exhibit A is a website printout of a United States Senator's letter to Google's Chief Executive Officer regarding terrorist content on

8

The court first addresses the parties' section 230(c)(1) arguments and then turns to the sufficiency of the allegations.[4]

## A.    Section 230(c)(1)

Plaintiffs assert that none of the claims alleged in the TAC are barred by section 230(c)(1). In so doing, they improperly reargue a number of issues regarding the applicability of section 230(c)(1) that the court rejected in its earlier decision. These include Plaintiffs' assertion that section 230(c)(1) immunity does not apply to claims brought under the ATA because it was abrogated by the Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130 Stat. 852 (2016); that section 230(c)(1) immunity does not attach here, because the statute cannot apply outside the territorial jurisdiction of the United States; and that section 230(e)(1)'s exception for federal criminal prosecutions applies to private civil claims based on federal criminal statutes. Plaintiffs also argue that section 230(c)(1) does not apply because Google is an "information content provider" with respect to ISIS videos, and because claims five and six do not seek to treat Google as the speaker or publisher of third party content.

### 1.    Background of Section 230(c)(1)

Section 230(c), titled "Protection for 'Good Samaritan' blocking and screening of offensive material," provides two types of protection from civil liability. Only the first is relevant here. Section 230(c)(1) mandates that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information

---

YouTube. Exhibit B is a website printout of a transcript of a hearing before the Home Affairs Committee of the United Kingdom's Parliament at which a representative of Google testified, and Exhibit C is a website printout of what appears to be written evidence submitted by Google to the same Parliamentary committee. Federal Rule of Evidence 201 permits courts to take notice of "matters of public record," *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, Plaintiffs did not authenticate any of the exhibits and did not establish that these three printouts are matters of public record. The court declines to take judicial notice of these exhibits.

[4] The court notes that both parties tried to incorporate by reference their briefing on the motion to dismiss the SAC. *See* Mot. 9 n.2; Opp'n 2. This is an improper attempt to skirt the applicable page limits. *See* Civ. L.R. 7-2, 7-3. The court will consider only those arguments properly presented in the briefing on the current motion.

content provider." 47 U.S.C. § 230(c)(1).[5]  Accordingly, section 230(c)(1) "precludes liability that treats a website as the publisher or speaker of information users provide on the website." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016).  "In general, this section protects websites from liability for material posted on the website by someone else." *Id*.  Section 230(c)(1) "overrides the traditional treatment of publishers, distributors, and speakers under statutory and common law." *Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003).  "As a matter of policy, 'Congress decided not to treat providers of interactive computer services like other information providers such as newspapers, magazines or television and radio stations, all of which may be held liable for publishing or distributing obscene or defamatory material written or prepared by others.'"  *Id*. at 1026 (quoting *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C. 1998)).  In the absence of the protection afforded by section 230(c)(1), one who published or distributed speech online "could be held liable for defamation even if he or she was not the author of the defamatory text, and . . . at least with regard to publishers, even if unaware of the statement."  *Id*. at 1026-27.

The Ninth Circuit has held that the CDA "does not declare 'a general immunity from liability deriving from third-party content.'"  *Internet Brands*, 824 F.3d at 852 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009)).  Nor was it "meant to create a lawless no-man's land on the Internet."  *Roommates*, 521 F.3d at 1164.  Rather, section 230(c)(1) only protects from liability (a) a provider of an interactive computer service (b) that the plaintiff seeks

---

[5] The second immunity provision, section 230(c)(2), states:

> No provider or user of an interactive computer service shall be held liable on account of—
>
> > **(A)** any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
> >
> > **(B)** any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1). . . .

47 U.S.C. § 230(c)(2).

to treat as a publisher or speaker (c) of information provided by another information content provider. *Barnes*, 570 F.3d at 1100-01; *Roommates*, 521 F.3d at 1162.

### 2. JASTA

Congress enacted JASTA in September 2016. JASTA expanded the ATA by adding 18 U.S.C. § 2333(d), which provides that US nationals may assert liability against a person who aids and abets or conspires with a person who commits an act of international terrorism.[6] JASTA also amended the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611, to add a terrorism-related exception to the FSIA's grant of immunity to foreign states. JASTA includes the following statement of purpose:

> The purpose of this Act is to provide civil litigants with the broadest possible basis, consistent with the Constitution of the United States, to seek relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities against the United States.

JASTA § 2(b).

In opposing the motion to dismiss the SAC, Plaintiffs argued that JASTA's statement of purpose repealed the immunity provided by section 230(c)(1), rendering section 230(c)(1) inapplicable to their claims. Plaintiffs now assert that they "stand[] by its [sic] arguments that JASTA commands that Section 230 does not apply to ATA cases." Opp'n 20. They express disagreement with the court's decision and provide "clarifications of their position." *Id.*

The court addressed Plaintiffs' argument at length in its order on the motion to dismiss and concluded that JASTA did not expressly or impliedly repeal section 230(c)(1). *Gonzalez*, 282 F. Supp. 3d at 1158-61. Plaintiffs' "clarifications" simply re-hash their previous argument that JASTA's statement of purpose expressed Congress's intent to abrogate any limitation on the ATA, including section 230(c)(1). The court considered and rejected this. *Id.* Their argument in opposition to the current motion is nothing more than an attempt to seek reconsideration on this issue without complying with the local rules, which require a party to obtain leave of court. Civ.

---

[6] Plaintiffs bring claims one and two pursuant to section 2333(d).

United States District Court
Northern District of California

L.R. 7-9(a). A motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments presented before such order. Civ. L.R. 7-9(b).

None of the grounds for reconsideration are present here. Moreover, the local rule makes clear that "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civ. L.R. 7-9(c). Plaintiffs do just that, by repeating the arguments they previously made. The court declines to revisit its prior ruling that JASTA did not repeal section 230(c)(1).

### 3. Extraterritorial Application of Section 230(c)(1)

Plaintiffs next ask the court to revisit its ruling that this case does not involve an impermissible extraterritorial application of section 230(c)(1). Plaintiffs previously argued that section 230(c)(1) does not apply outside the territorial jurisdiction of the United States, and that all of the relevant events at issue took place outside the United States. The court applied the *RJR Nabisco*/*Morrison* framework in concluding that the focus of section 230(c)(1) is on limiting civil liability, and that here, the location of the conduct relevant to that focus is in this district, where the litigation is filed and where immunity is sought. *Gonzalez*, 282 F. Supp. 3d at 1161-63 (citing *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100-101 (2016), *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010)). Thus, the court concluded, this case involves a domestic application of section 230(c)(1). *Gonzalez*, 282 F. Supp. 3d at 1163.

The court observed in a footnote that for the first time at oral argument, Plaintiffs argued "that in determining the statute's focus for purposes of the two-step extraterritorial inquiry, the court must look at the entire statute, and not just the subsection at issue here." *Id.* at 1162 n.4. The court noted that Plaintiffs had not briefed this argument in their opposition and that its basis was unclear. *Id.* Plaintiffs now attempt to flesh out this argument by asserting that the focus of

United States District Court
Northern District of California

the entire statute "was on empowering parents and others in the United States with tools to minimize exposure to indecent, obscene and other harmful material on the internet." Opp'n 20. Once again, this is an improper attempt to seek reconsideration on this issue. Plaintiffs fail to demonstrate "[a] manifest failure by the Court to consider material facts or a change of law occurring after the time" of the order on the motion to dismiss the SAC. Nor do they show the existence of "a material difference in fact or law from that which was presented to the Court," and that "in the exercise of reasonable diligence," they did not know of such fact or law at the time of the order. *See* Civ. L.R. 7-9(b). Instead, Plaintiffs interpret the court's prior order as an invitation to take another run at an argument they previously made and lost. This is improper, for "[a] motion for reconsideration may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (emphasis in original) (quotation omitted).

Moreover, contrary to Plaintiffs' current position, the court did not confine its analysis of the statute's focus to section 230(c)(1). Instead, it examined all of the provisions of section 230 and concluded that "the immunities in section 230(c) are far from tangential; they are one of the means by which Congress 'sought to further First Amendment and e-commerce interests on the Internet while also promoting the protection of minors.'" *Gonzalez*, 282 F. Supp. 3d at 1163 (citing *Batzel*, 333 F.3d at 1028). The court once again rejects Plaintiffs' extraterritoriality argument.

### 4. Section 230's Exception for Federal Criminal Prosecutions

Next, Plaintiffs reassert that section 230(c)(1) immunity does not apply to their ATA claims due to the exception to immunity for federal criminal prosecutions set forth in section 230(e)(1). Specifically, 47 U.S.C. § 230(e)(1), titled "No effect on criminal law," states that "[n]othing in [section 230] shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of

Title 18, or any other Federal criminal statute."[7] According to Plaintiffs, this exception applies to block the application of section 230(c)(1) immunity in private civil claims based on federal criminal statutes.

The court already considered and rejected Plaintiffs' argument that "the ATA's civil suit provision is part of the 'enforcement' of a federal criminal statute, and thus falls outside section 230(c)(1)'s protections, in accordance with section 230(e)(1)." *Gonzalez*, 282 F. Supp. 3d at 1163 n.5. The court identified other cases that have concluded that section 230(e)(1) "excludes civil suits," citing *Jane Doe 1 v. Backpage.com*, LLC, 817 F.3d 12, 23 (1st Cir. 2016), and *Cohen v. Facebook*, 252 F. Supp. 3d 140, 157 n.11 (E.D.N.Y. 2017). As with their argument regarding extraterritoriality, Plaintiffs make a late attempt to flesh out their position on this point, asserting that "the *Backpage* ruling was flawed." Opp'n 16. They now cite two cases that they claim "support a broader construction of the word 'enforcement' that would include private enforcement actions, including action under the ATA." *See id.* (citing *Nieman v. Versuslaw*, No. 12-3104, 2012 WL 3201931, at *9 (C.D. Ill. Aug. 3, 2012), and *Noah v. AOL Time Warner Inc.*, 261 F. Supp. 2d 532, 538 (E.D. Va. 2003)).

Once again, Plaintiffs improperly seek reconsideration on this issue without complying with the local rules. The court's order was not an invitation or request for additional facts or argument, particularly those that Plaintiffs could have raised in the prior motion. *See Marlyn Nutraceuticals*, 571 F.3d at 880. Notably, the two cases Plaintiffs now cite in support of their position are not new; both were decided years before the court's order dismissing the SAC. Moreover, nothing in those cases compels a different conclusion as to whether section 230(e)(1) blocks the application of immunity with respect to private civil claims based upon federal criminal statutes. In *Nieman*, the court considered whether section 230 would bar a civil claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, and

---

[7] 47 U.S.C. § 223 prohibits obscene or harassing telephone calls in the District of Columbia or in interstate or foreign communications. 47 U.S.C. § 231, the Child Online Protection Act, prohibits the knowing making of a communications by means of the World Wide Web "for commercial purposes that is available to any minor and that includes material that is harmful to minors." 47 U.S.C. § 231(a)(1).

concluded that it was "unclear" whether it would do so. 2012 WL 3201931, at \*9. The court ultimately concluded that it need not resolve the issue, as the plaintiff had failed to state a RICO claim. *Id*. In *Noah*, the court merely recounted the exemptions to section 230 immunity that are set forth in section 230(e)(1)-(4). 261 F. Supp. 2d at 538 (citing 47 U.S.C. § 230(e)). The *Noah* court held that none of these exceptions precluded the application of section 230(c)(1) to bar discrimination claims based on federal civil rights statutes. *Id*. at 539. In sum, *Nieman* and *Noah* did not engage in any meaningful analysis on the issue presented here, namely, whether section 230(c)(1) applies to civil claims brought pursuant to federal criminal statutes based on section 230(e)(1)'s exception for federal criminal prosecutions. The court denies Plaintiffs' request for reconsideration on this issue.

### 5. Whether Claims One through Four are Barred by Section 230(c)(1)

As noted, section 230(c)(1) provides protection from liability (a) to a provider of an interactive computer service (b) that the plaintiff seeks to treat as a publisher or speaker (c) of information provided by another information content provider. *Barnes*, 570 F.3d at 1100-01. This court previously held that all of the claims in the SAC fell within the scope of section 230(c)(1), noting that Plaintiffs' claims sought to treat Google as a publisher of third party content, and that Google was not an "information content provider" with respect to ISIS's YouTube videos.[8] Gonzalez, 282 F. Supp. 3d at 1163-71.

Plaintiffs' amended claims one through four are based on Google's alleged provision of material support or resources to ISIS. They seek to impose liability on Google for knowingly permitting ISIS and its followers to post content on YouTube. *See* TAC ¶¶ 565, 569, 574, 581. The following discussion pertains to these claims only. As previously noted, Plaintiffs' amended claims three and four add a new theory that Google allegedly shared advertising revenue with ISIS; the court addresses the revenue sharing claims separately below in its discussion of whether Plaintiffs have adequately alleged proximate cause.

### a. Whether Plaintiffs Seek to Treat Google as a Publisher or

---

[8] The parties do not dispute that Google is an interactive computer service provider.

United States District Court
Northern District of California

**Speaker**

Although Plaintiffs broadly assert that that their "new and amended claims do not treat Facebook [sic] as the 'publisher or speaker' of third party content, and thus do not trigger CDA protection," (Opp'n 7), their opposition largely focuses on defending claims five and six. They do not specifically address claims one through four, and do not explain how they have been amended so that they do not seek to hold Google liable as the "publisher or speaker" of ISIS's YouTube videos. Accordingly, Plaintiffs have conceded the issue.[9] Other than the new revenue sharing theory which is addressed below, claims one through four have not changed in any meaningful way. The court's prior analysis that the claims in the SAC seek to treat Google as the publisher or speaker of ISIS's YouTube videos applies equally to claims one through four in the TAC. *See Gonzalez*, 282 F. Supp. 3d at 1164-67.

The Ninth Circuit has instructed that in examining whether section 230(c) immunity applies to a particular claim, "what matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101-02. While "the cause of action most frequently associated with the cases on section 230 is defamation, . . . the language of the statute does not limit its application to defamation cases." *Id.* at 1101 (citations omitted). "[C]ourts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Id.* at 1102. "This guidance emphasizes that Section 230(c)(1) is implicated not only by claims that explicitly point to third party content but also by claims which, though artfully pleaded to avoid direct reference, implicitly require recourse to that content to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party [c]ommunications." *Cohen*, 252 F. Supp. 3d at 156 (discussing *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 175 (2d

---

[9] Plaintiffs acknowledge this concession by stating that they "have largely retained the factual allegations and claims from the SAC to preserve them in the event an appeal may be necessary." Opp'n 2 n.2.

Cir. 2016) (quoting *Barnes*, 570 F.3d at 1102)).

Claims one through four seek to impose liability on Google for knowingly permitting ISIS and its followers to post content on YouTube. *See* TAC ¶¶ 565, 569, 574, 581. These claims still "inherently require[] the court to treat [Google] as the publisher or speaker of [third-party] content" because they "require recourse to that content to establish liability or implicate a defendant's role . . . in publishing or excluding third party communications." *Gonzalez*, 282 F. Supp. 3d at 1164-65 (quoting *Barnes*, 570 F.3d at 1101-02; *Cohen*, 252 F. Supp. 3d at 156)). The TAC alleges that Google "knowingly provided" its YouTube platform and other services to ISIS, and that ISIS "embraced and used" YouTube "as a powerful tool for terrorism," allowing it "to connect its members and to facilitate [its] ability to communicate, recruit members, plan and carry out attacks, and strike fear in its enemies." TAC ¶¶ 12, 13, 21. It further alleges that Google "refuse[d] to actively identify ISIS YouTube accounts" or to make "substantial or sustained efforts to ensure that ISIS would not re-establish the accounts using new identifiers." *Id.* at ¶¶ 20, 493. Claims one through four allege that Google violated the material support statutes by permitting ISIS and its supporters to publish harmful material on YouTube, and by failing to do enough to remove that content and the users responsible for posting the material. These claims target Google's decisions whether to publish, withdraw, exclude, or alter content, which is "precisely the kind of activity for which section 230 was meant to provide immunity." *Roommates*, 521 F.3d at 1170. "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Id.* at 1170-71. Claims one through four remain "inextricably bound up with the content of ISIS's postings, since their allegations describe a theory of liability based on the 'essential' role that YouTube has played 'in the rise of ISIS to become the most feared terrorist organization in the world.'" *Gonzalez*, 282 F. Supp. 3d at 1165 (quoting SAC).

In a contorted argument, Plaintiffs assert that they may rely upon third party content to support their claims without "running afoul of Section 230." Opp'n 21-22. Although they do not tie this theory to any particular claim in the TAC, it appears to be their response to the court's determination that the claims in the SAC were "inextricably bound up with the content of ISIS's

postings." *Gonzalez*, 282 F. Supp. 3d at 1165. Plaintiffs offer a lengthy discussion of *In re Incretin-Based Therapies Products Liability Litigation*, 721 Fed. Appx. 580, 583 (9th Cir. 2017). There, the Ninth Circuit reversed a trial court's determination that certain discovery was irrelevant to whether federal law preempted the state law claims, where the discovery was relevant to the merits of the state law claims themselves. According to Plaintiffs, *In re Incretin-Based Therapies* supports their argument that "[e]vidence which would support" a finding that Google violated the ATA "is not the same as holding [Google] responsible for the content of third parties." Opp'n 23. Plaintiffs' argument is hard to follow and not persuasive. *In re Incretin-Based Therapies* does not address section 230(c)(1) or the ATA. Plaintiffs' argument appears to be a variation on their previous contention that their claims are based upon "Google's provision of the means for ISIS followers to self-publish content, rather than challenging the actual content itself." *See Gonzalez*, 282 F. Supp. 3d at 1165. The court rejected this argument, holding that Plaintiffs' allegations in the SAC were inconsistent with their attempt to avoid section 230 immunity by "divorc[ing] ISIS's offensive content from the ability to post such content." *Id*. So too here. Plaintiffs do not allege that they have been harmed by the mere provision of the YouTube platform to ISIS and its followers. Instead, they allege that "ISIS uses YouTube as a tool and a weapon of terrorism," and that ISIS recruits, plans, incites, instructs, threatens, and communicates its terror message on YouTube. TAC ¶¶ 194, 196. Plaintiffs' claims "are not premised solely on the theory that Google provided a publishing or communication platform to ISIS; they are further grounded in the allegation that Google failed to prevent ISIS from using YouTube to transmit its hateful message, which resulted in great harm." *Gonzalez*, 282 F. Supp. 3d at 1165. Plaintiffs repeat those allegations in the TAC. *See* TAC ¶¶ 185, 193, 304.

In sum, the court concludes that Plaintiffs' claims one through four seek to treat Google as the publisher or speaker of ISIS's YouTube videos.

### b. Whether Google is an Information Content Provider

Without tying their argument to any particular claim, Plaintiffs next argue that Google is an information content provider because it "actively recommend[s]" ISIS videos to YouTube users. Opp'n 23.

United States District Court
Northern District of California

United States District Court
Northern District of California

The CDA defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). While a website operator like Google can be both an "interactive computer service" and an "information content provider," *Roommates*, 521 F.3d at 1162, "[t]he critical issue is whether . . . [the interactive computer service] acts as an information content provider with respect to the information" at issue. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (quotation omitted).

In *Roommates*, the court interpreted the term "development" as used in the section 230(f)(3) definition of "information content provider" "as referring not merely to augmenting the content generally, but to materially contributing to its alleged unlawfulness." 521 F.3d at 1167-68. "In other words, a website helps to develop unlawful content, and thus falls within the exception to section 230 [immunity], if it contributes materially to the alleged illegality of the conduct." *Id.* at 1168. In *Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398, 410 (6th Cir. 2014), the Sixth Circuit adopted the definition of "development" from *Roommates* and held that "[a] material contribution to the alleged illegality of the content does not mean merely taking action that is necessary to the display of allegedly illegal content. Rather, it means being responsible for what makes the displayed content allegedly unlawful."

Plaintiffs previously argued that Google acts as an information content provider by placing targeted ads paired with ISIS-related content, "thus creating 'new unique content' in the form of a composite page for specific viewers." *Gonzalez*, 282 F. Supp. 3d at 1168; *see also* TAC ¶¶ 536-41. The court rejected this theory, holding that Plaintiffs had not alleged that Google "materially contribut[ed]" in any way to the actual content of ISIS's YouTube videos" or that the "targeted ad algorithm is anything but content neutral." *Gonzalez*, 282 F. Supp. 3d at 1168. In the TAC, Plaintiffs add one paragraph to support a new theory that Google acts as an information content provider by "recommend[ing] content to users based upon the content and what is known about the viewer." TAC ¶ 535. The TAC contains only one screenshot example of an alleged "video that was recommended to a user based upon other videos he had viewed in the past," but it is not obvious from reviewing the screenshot what is being recommended and whether it has any

1  connection to ISIS.  *See id.*  Plaintiffs allege upon information and belief that Google's

2  recommendation of ISIS videos "is a common occurrence."  *Id.*  According to Plaintiffs, "by

3  promoting unsolicited ISIS content to users, Google is contributing to the illegality [of the content]

4  because Google is using the ISIS content for business purposes."  Opp'n 24.

5       Plaintiffs' "new" theory fares no better this time around.  The TAC does not contain any

6  allegation that Google "materially contribut[ed]" in any way to the content of ISIS videos by

7  promoting ISIS-related content.  It does not allege that Google's content recommendation features

8  either created or developed ISIS content, or played any role at all in making ISIS's terrorist videos

9  objectionable or unlawful.  *See Gonzalez*, 282 F. Supp. 3d at 1168-70.

10       In *Roommates*, the court distinguished between a website that merely provides "neutral

11  tools" that may be used by third parties to post unlawful content, and a website that "both elicits

12  the allegedly illegal content and makes aggressive use of it in conducting its business."  521 F.3d

13  at 1171-72.  The court held that a search engine's provision of "neutral tools to carry out what may

14  be unlawful or illicit searches does not amount to 'development' for purposes of the immunity

15  exception."  *Id.* at 1169.  As with Google's targeted ad algorithm, there is no indication that its

16  content recommendation tool is anything other than content neutral.  *See Gonzalez*, 282 F. Supp.

17  3d at 1168.  Plaintiffs dispute this, arguing that Google's promotion of ISIS videos is not content

18  neutral because "it looks to the content as well as the characteristics of the targeted viewer to

19  decide which videos should be promoted."  Opp'n 24.  However, this contention is not borne out

20  by the allegations in the TAC.  In discussing the content recommendation tool in the TAC,

21  Plaintiffs allege that "Google uses computer algorithms to match videos and accounts with

22  similarities, so that similar YouTube videos and accounts are suggested to a user or viewer when

23  viewing a YouTube account," and that Google's content recommendation tool applies broadly

24  across YouTube.  *See* TAC ¶¶ 535, 543, 544, 548-50, 549.  Google's use of an algorithm that

25  aggregates user and video data to make content recommendations across YouTube, whether the

26  recommended content is an ISIS video or a cat video, does not turn Google into an "information

27  content provider" with respect to the videos themselves.

28       This conclusion finds support in *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016),

in which the Ninth Circuit rejected the contention that the Yelp website's republication of an allegedly defamatory review in the form of "proactively post[ing] advertisements or promotional links [to the negative review] on Google" transformed Yelp into an information content provider as to that review. The court noted that "[n]othing in the text of the CDA indicates that immunity turns on how many times an interactive computer service publishes 'information provided by another information content provider[,]'" and held that "[j]ust as Yelp is immune from liability under the CDA for posting user-generated content on its own website, Yelp is not liable for disseminating the same content in essentially the same format to a search engine, as this action does not change the origin of the third-party content." *Id.* (quoting 47 U.S.C. § 230(c)(1)). As with the Yelp review at issue in *Kimzey* that was linked to a different website, Google's content recommendation tool "does not change the origin of the third-party content" that it recommends. *See id.* Google's provision of neutral tools such as its content recommendation feature does not make Google into a content developer under section 230, because as currently alleged, the tools do not encourage, elicit, or make aggressive use of the posting of unlawful or objectionable material. *See Roommates*, 521 F.3d at 1171-72.

Section 230(c)(1) "precludes treatment as a publisher or speaker for '*any* information provided by *another* information content provider.'" *Carafano*, 339 F.3d at 1125 (emphasis in original) (quoting 47 U.S.C. § 230(c)(1)). "The critical issue is whether . . . [the interactive computer service] acts as an information content provider with respect to the information" at issue. *Id.* (quotation omitted). Here, the TAC does not allege that Google acted as an "information content provider" with respect to the information at issue, i.e., the offending ISIS videos. Accordingly, Google satisfies the third element of section 230(c)(1) immunity. Plaintiffs' claims one through four (other than the revenue sharing theory in claims three and four, discussed below) fall within the scope of section 230(c)(1)'s grant of immunity and are therefore barred.

### 6. Whether Claims Five and Six are Barred by Section 230(c)(1)

Plaintiffs' fifth claim for relief is for concealment of material support and resources to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339C(c). TAC ¶¶ 587-88. According to Plaintiffs, this claim is not based upon Google's role in providing a publishing

platform.  Instead, Plaintiffs state this claim is based upon the allegation that Google violated section 2339C(c) "with regard to material support or resources that *other individuals and entities provided to ISIS* in violation of § 2339B."  Opp'n 8 (emphasis added).  According to Plaintiffs, Google has enabled ISIS to continue its terrorist activities "by concealing the material support and resources provided by ISIS leaders, members, affiliates and recruits to ISIS via Google's Platform and Services."  *Id*. at 5 (citing TAC ¶ 298).

In their opposition, Plaintiffs argue that this claim does not require the court to treat Google as the publisher or speaker of third party content, because it is not based on Google's own provision of material support or resources to ISIS.  Opp'n 12-13.  Once again, this contention does not square up with the allegations supporting the concealment claim.  According to the TAC, Plaintiffs seek to hold Google liable based on its operation of YouTube.  Plaintiffs allege that even though "Google's own terms and policies ostensibly bar ISIS and other foreign terrorist organizations . . . from using Google . . . and Google has publicly claimed that it does not permit ISIS to use Google's Platform and Services . . . in practice, Google has nevertheless knowingly provided its Platform and Services to ISIS, its members and affiliates[.]"  TAC ¶¶ 200-201.  Thus, "by falsely representing that it does not permit ISIS" to use YouTube "when in fact *it has knowingly continued to provide its Platform, Services and accounts to ISIS*, Google has concealed and disguised the nature, location, source, or ownership of material support or resources, knowing that they are used in preparation for, or in carrying out, criminal terrorist activity."  *Id*. at ¶¶ 201-02 (emphasis added).  Plaintiffs' "new" concealment claim does little more than restate the material support claims in a slightly different form.  All of those claims are barred by section 230(c)(1) as discussed above.  Based on the allegations in the TAC, at its core, Plaintiffs' concealment claim ultimately seeks to hold Google liable for allegedly failing to prevent ISIS and its supporters from using YouTube, and by failing to remove ISIS videos from YouTube.  As with claims one through four, the concealment claim "requires recourse to that content" to establish any causal connection between Google permitting ISIS to use YouTube and the Paris attack.  The claim thus "inherently requires the court to treat [Google] as the 'publisher or speaker'" of ISIS content.  *See Cohen*, 252 F. Supp. 3d at 156; *Barnes*, 570 F.3d at 1101-02; *see also Gonzalez*, 282

F. Supp. 3d at 1165; TAC ¶¶ 12, 13, 21.

Plaintiffs' sixth claim alleges that Google provides funds, goods, or services to ISIS in violation of terrorism sanctions regulations issued pursuant to IEEPA. TAC ¶ 592. IEEPA authorizes the President to "declare[] a national emergency" in order to "deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States." 50 U.S.C. § 1701(a). 50 U.S.C. § 1705 provides that it is unlawful to violate any regulations issued under IEEPA and authorizes civil and criminal penalties for such violations. President Bush exercised his authority under IEEPA to issue Executive Order 13224 on September 23, 2001, which blocked the property and interests that are in the United States of specific foreign persons listed in an attachment to the Executive Order, as well as others who provide support, services, or assistance to, or otherwise associate with, designated terrorists. 66 FR 49079, Exec. Order No. 13224, 2001 WL 34773846. Federal regulations enacted pursuant to the Executive Order and IEEPA prohibit any "U.S. person [from] engag[ing] in any transaction or dealing in property or interests in property of persons whose property and interests in property are blocked . . . including . . . [t]he making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked . . ." 31 C.F.R. § 594.204(a). They also prohibit "any transaction by any U.S. person or within the United States . . . that evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in [31 C.F.R. Part 594]." 31 C.F.R. § 594.205(b). *See* TAC ¶¶ 66-67.

Plaintiffs allege that "Google knowingly and willfully engaged in transactions with, and provided funds, goods, or services to or for the benefit of, Specially Designated Global Terrorists . . . including ISIS, its leaders, and members," violating Executive Order 13224, 31 C.F.R. Part 594, and 50 U.S.C. § 1705. TAC ¶ 592. According to Plaintiffs, Google violated IEEPA "when it received property or interest in property of ISIS and its operatives" and "permit[ed] any access to ISIS property that came into Google's possession (including inter alia downloading or copying videos, which are not traditional publishing functions)[.]" Opp'n 15-16.

As with claim five, Plaintiffs' IEEPA claim is a restated version of their material support

United States District Court
Northern District of California

claims.  It is based on the allegation that Google provided services to ISIS by permitting ISIS supporters to use the YouTube platform, including allowing supporters to post videos ("received property or interest in property of ISIS") and utilize YouTube's functions (including "downloading or copying videos").  This claim ultimately seeks to hold Google liable for failing to prevent ISIS and its supporters from using YouTube and failing to remove ISIS-related content from YouTube.  As with the prior claims, the IEEPA claim "requires recourse to that content" to establish any causal connection between YouTube and the Paris attack, and "inherently requires the court to treat [Google] as the 'publisher or speaker'" of ISIS content.  *See Cohen*, 252 F. Supp. 3d at 156; *Barnes*, 570 F.3d at 1101-02; *see also Gonzalez*, 282 F. Supp. 3d at 1165; TAC ¶¶ 12, 13, 21.

Since claims five and six seek to treat Google as the publisher or speaker of third party content, and the TAC does not allege that Google is an information content provider with respect to ISIS-related content posted on YouTube, the court concludes that Plaintiffs' fifth and sixth claims for relief are barred by section 230(c)(1).

### B.     Whether Plaintiffs Have Adequately Alleged Proximate Cause

Google also moves to dismiss Plaintiffs' section 2333(a) claims on the ground that they have failed to plausibly allege that Google's alleged wrongdoing proximately caused their injuries. Mot. 18-19.  Plaintiffs bring claims three, four, five, and six pursuant to section 2333(a), which authorizes a private right of action for damages sustained in an act of international terrorism:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).  These include Plaintiffs' revenue sharing claims, which are based upon the allegations in the TAC that Google violated the ATA by knowingly sharing advertising revenue with ISIS, and that the provision of advertising revenue to ISIS itself constitutes material support in violation of sections 2339A and 2339B.  *See* TAC ¶ 533.  Google contends that section 2333(a)'s "'by reason of' language incorporates a proximate cause standard that requires a close

causal connection: that the defendants' actions 'led directly' to Plaintiffs' injuries."  Mot. 18

(citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).  According to Google,

Plaintiffs' allegations do not satisfy this standard.

On January 31, 2018, after Plaintiffs filed their opposition brief, the Ninth Circuit issued

*Fields*, in which the court held that in order to satisfy the "by reason of" proximate cause

requirement to impose civil liability under 18 U.S.C. § 2333(a), "a plaintiff must show at least

some direct relationship between the injuries that he or she suffered and the defendant's acts."

881 F.3d 739, 744.  The court granted Plaintiffs leave to file a supplemental brief addressing the

impact of *Fields* on their allegations.  Plaintiffs timely filed the supplemental brief.  [Docket No.

126.]

In contrast with claims three through six, Plaintiffs bring claims one and two pursuant to

section 2333(d).  JASTA expanded ATA liability by adding section 2333(d) to reach "any person

who aids and abets, by knowingly providing substantial assistance [to], or who conspires with the

person who committed such an act of international terrorism."  18 U.S.C. § 2333(d)(2).  *Fields* did

not address the standards applicable to claims brought pursuant to section 2333(d), and the parties

did not brief those standards in the present motion.  Therefore, the court does not address the

question of whether Plaintiffs adequately pleaded proximate causation as to the section 2333(d)

claims.  In any event, as discussed above, the section 2333(d) claims are dismissed based on

section 230 immunity.

The remaining claims three through six are brought pursuant to section 2333(a).  As

discussed above, other than the revenue sharing aspects of claims three and four, these claims all

fall within the scope of the CDA's immunity provision and are thus barred.  As an alternative

holding, the court concludes that these claims also fail for the independent reason that they do not

satisfy the proximate causation standard announced in *Fields*.  The revenue sharing claims fail for

the same reason.

In *Fields*, the plaintiffs were family members of United States government contractors who

were killed in Jordan in an attack for which ISIS later claimed credit.  881 F.3d at 741.  The

plaintiffs sued Twitter, Inc. ("Twitter") pursuant to 18 U.S.C. § 2333(a), alleging that Twitter

knowingly provided material support to ISIS in violation of 18 U.S.C. §§ 2339A and 2339B in the

form of Twitter accounts and direct messaging services. *Id*. at 742. The district court dismissed the complaint, holding among other things that the plaintiffs "had failed to plead that they were injured 'by reason of' Twitter's conduct." *Id*. at 741.[10] On appeal, the parties disputed the scope of the "by reason of" requirement in section 2333(a). *Id*. at 744. The plaintiffs argued that "proximate causation is established under the ATA when a defendant's 'acts were a substantial factor in the sequence of responsible causation,' and the injury at issue 'was reasonably foreseeable or anticipated as a natural consequence.'" *Id*. at 744 (citing *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013)). Twitter argued that the "by reason of" standard required the plaintiffs "to show that Twitter's conduct 'led directly' to their injuries." *Fields*, 881 F.3d at 744.

Noting that "Twitter ha[d] the better of the argument," the Ninth Circuit held that "for purposes of the ATA, it is a direct relationship, rather than foreseeability, that is required." *Id*. at 744, 748. In rejecting the plaintiffs' proximate cause definition, the court noted the plaintiffs' heavy reliance "on case law emphasizing the fungibility of support to terrorist organizations," which "only highlights the insufficiency of foreseeability alone as the standard for proximate causation in the ATA context." *Id*. at 748-49. The court discussed recent Supreme Court authority rejecting a foreseeability standard of proximate causation for claims brought under a different federal statute. *Id*. at 748 (citing *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017)). In *City of Miami*, the Supreme Court held that for claims brought under the Fair Housing Act ("FHA"), "foreseeability alone [could] not ensure the close connection that proximate cause requires." *Fields*, 881 F.3d at 748 (quoting *City of Miami*, 137 S. Ct. at 1306). The Supreme Court reasoned that "because '[t]he housing market is interconnected with economic and social life,' an FHA violation could 'be expected to cause ripples of harm to flow far beyond the defendant's misconduct,'" but there was nothing in the FHA to suggest "that Congress intended to provide a remedy wherever those ripples travel." *Fields*, 881 F.3d at 748-49 (quoting *City of Miami*, 137 S. Ct. at 1306 (quotation omitted)). The Ninth Circuit reached the same conclusion in

---

[10] The district court also held that Twitter was immune from the claims pursuant to section 230, because the plaintiffs' claims sought to treat Twitter as the publisher of ISIS's content. *Fields*, 881 F.3d at 741. The Ninth Circuit affirmed on the ground that the plaintiffs had failed to adequately plead proximate causation, and declined to reach the section 230 issue. *Id*. at 750.

*Fields*:

> Communication services and equipment are highly interconnected with modern economic and social life, such that the provision of these services and equipment to terrorists could be expected to cause ripples of harm to flow far beyond the defendant's misconduct. Nothing in § 2333 indicates that Congress intended to provide a remedy to every person reached by these ripples; instead, Congress intentionally used the "by reason of" language to limit recovery. Moreover, we are troubled by the seemingly boundless litigation risks that would be posed by extending the ATA's bounds as far as foreseeability may reach.

*Fields*, 881 F.3d at 749. The court affirmed the district court's conclusion that the plaintiffs had not pleaded that "Twitter's provision of communication equipment to ISIS, in the form of Twitter accounts and direct messaging services, had any direct relationship" with the plaintiffs' injuries. *Id*. at 759.

Here, the court concludes that the TAC does not meet the *Fields* standard of proximate cause. Specifically, the TAC does not allege a direct relationship between the "material support" that Google allegedly provided to ISIS and the Paris attack. While the TAC includes detailed allegations regarding the alleged use of YouTube by ISIS and its affiliates, the TAC does not allege any facts plausibly connecting the general availability of YouTube with the attack itself.

Plaintiffs assert in their supplemental brief that the TAC alleges the "extensive use of YouTube by ISIS recruiters to recruit ISIS terrorists in France and Belgium." Pls.' Supp. Br. 4 (citing TAC ¶¶ 311-41). They also argue that the TAC alleges that the "operational leader of the Paris Attacks, Abdelhami Abaaoud, distributed an ISIS YouTube video of himself recruiting ISIS terrorists, and the suicide bomb-maker of the Paris Attacks, Najim Laachraoui, also distributed links to jihadi YouTube videos." *Id*. (citing TAC ¶¶ 344-63). However, the actual allegations supporting these claims are far too attenuated and speculative to establish proximate causation between Google's operation of YouTube and the Paris attacks. For example, as to allegations regarding the use of YouTube to recruit terrorists in France and Belgium, the TAC alleges that there were three "active and successful ISIS recruiting networks in Belgium": Sharia4Belgium, Resto du Tawhid, and the Zerkani Network. TAC ¶ 310. Plaintiffs then allege a connection between the Zerkani Network and the Paris Attacks, in that Abbaoud, "considered the operational

27

leader of the Paris Attack," was one of Zerkani's recruits. *Id.* at ¶ 344. Plaintiffs allege that the founders of the three recruiting networks "used and relied on social media to build and maintain connections with ISIS recruits," TAC ¶ 332, but the TAC alleges that only Sharia4Belgium and Resto du Tawhid "used YouTube as a primary tool for indoctrination and recruitment to ISIS." *Id.* at ¶¶ 333-39. The TAC does not actually contain allegations about the Zerkani Network's use of YouTube.

As to Abbaaoud, the TAC alleges only that Abaaoud "was an active user of social media," including YouTube, and that in March 2014, over a year and a half before the Paris attacks, Abaaoud "posted a link on his Facebook account to an ISIS recruiting video on YouTube in which Abaaoud and other ISIS members in Syria and Iraq appear, describing their life and role in ISIS." TAC ¶¶ 349, 356-58. With respect to Laachraoui, who Plaintiffs allege "prepared the explosives for the suicide bombs used in the Paris Attack," the TAC alleges only that he "actively followed ISIS social media accounts and posted links to *jihadi* YouTube videos on his own accounts as well." *Id.* at ¶¶ 359, 362. These are the only allegations connecting any of the individuals who committed the Paris attack to YouTube. They do not support a finding that Google's provision of the YouTube platform to ISIS "had any direct relationship with the injuries" that Plaintiffs suffered. *See Fields*, 881 F.3d at 749.

Plaintiffs' revenue sharing claims also do not support a finding of proximate causation under the *Fields* standard. Plaintiffs allege on information and belief that Google shared advertising revenue with ISIS. They argue that "such support contributed to the Paris attack because even if not used directly, [it] allowed other ISIS funds to be used to support the attack." Opp'n 24-25; *see* TAC ¶ 533. This theory, which rests on the fungibility of financial contributions to terrorists, is identical to an argument the Ninth Circuit expressly rejected in *Fields*. *See Fields*, 881 F.3d at 748-49. Specifically, the Ninth Circuit held that "[a]ccepting the fungible nature of material support does not require a court to also hold that *any* reckless contribution to a terrorist group or affiliate, no matter its attenuation, must result in civil liability. Thus, the fact of fungibility does not modify the causal requirement imposed by the ATA's 'by reason of' element." *Id.* at 749 (emphasis added) (citations omitted). Plaintiffs do not allege any direct

28

causal connection between the Paris attack and any shared revenue provided to ISIS in connection with the single YouTube video alleged in the TAC.

The TAC contains numerous allegations that mirror those rejected as insufficient in *Fields*: that Google's "alleged provision of material support to ISIS facilitated the organization's growth and ability to plan and execute terrorist attacks." *See Fields*, 881 F.3d at 749-50; *see* TAC ¶ 293 ("Google's Platform and Services have played an essential role in enabling ISIS to grow, develop, and project itself as the most feared terrorist organization in the world"); *see also* TAC ¶¶ 282-92, 294-98. As the Ninth Circuit recognized, such allegations are not enough to show proximate causation. *See Fields*, 881 F.3d at 749-50. Accordingly, claims three through six, including Plaintiffs' revenue sharing claims, are dismissed for failure to adequately plead proximate causation.

## IV. CONCLUSION

For the foregoing reasons, the TAC is dismissed. With the exception of Plaintiffs' revenue sharing claims, the claims in the TAC are all premised on the theory that Google permitted ISIS and its supporters to use the YouTube platform to disseminate a terrorist message. Claims five and six simply attempt to repackage this theory under a different name. All of these claims fall within the scope of the CDA's immunity provision and are thus barred. As Plaintiffs have already been given an opportunity to amend the complaint to avoid CDA immunity, all of their claims other than the revenue sharing claims are dismissed with prejudice. Since the court cannot conclude that further amendment of Plaintiffs' revenue sharing claims would be futile, they are granted one final opportunity to amend those claims in a manner consistent with Rule 11. Any amended complaint shall be filed within 14 days of the date of this order. The fourth amended complaint may not contain any claims for relief that the court has already dismissed.

**IT IS SO ORDERED.**

Dated: August 15, 2018

_____
Donna M. Ryu
United States Magistrate Judge