**Excolo Law, PLLC**
Keith Altman (SBN 257309)
26700 Lahser Road, Suite 401
Southfield, MI 48033
516-456-5885
Email: kaltman@lawampmmt.com
sradner@1800lawfirm.com

**1-800-LAWFIRM**
Ari Kresch (*pro hac vice*)
26700 Lahser Road, Suite 401
Southfield, MI 48033
516-456-5885
800-LawFirm
Email: akresch@1800lawfirm.com

*Attorneys for Plaintiff Reynaldo Gonzalez*

**THE BERKMAN LAW OFFICE, LLC**
ROBERT J. TOLCHIN
*Admitted Pro Hac Vice*
829 East 15th Street, Box 7
Brooklyn, New York 11230
718-855-3627
Email: rtolchin@berkmanlaw.com

**WEINSTOCK MANION, A Law Corporation**
M. NEIL SOLARZ (SBN 78259)
DIANE Y. PARK (SBN 222354)
1875 Century Park East, Suite 2000
Los Angeles, California 90067
(310) 553-8844 • Fax (310) 553-5165

*Attorneys for Plaintiffs The Estate of Nohemi Gonzalez, Beatriz Gonzalez (Individually and as the Administrator of the Estate of Nohemi Gonzalez), Jose Hernandez, Rey Gonzalez, and Paul Gonzalez*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

---

| | |
|---|---|
| REYNALDO GONZALEZ; THE ESTATE OF NOHEMI GONZALEZ; BEATRIZ GONZALEZ, as the Administrator of the Estate of Nohemi Gonzalez,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | Case No: 4:16-CV-3282(DMR)<br><br>**REPLY ON MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT**<br><br>Hon. Donna M. Ryu<br>Hearing Date:<br>June 27, 2024 1:00 PM |

---

**REPLY ON MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT**

I.      **Prior Proceedings**

Plaintiffs disagree in certain respects with Google's description of the prior proceedings in this case.

First, Google asserts that this Court's August 2018 decision held that "Plaintiff's allegations fail to establish that Google's conduct proximately caused their injuries." (Google Opp. 15; see *id*. at 2 ("This Court has already found that Plaintiffs' allegations do not establish that Google proximately caused their injuries")). But that 2018 decision was expressly limited to claims three through six, which asserted claims under § 2333(a), because the Court's opinion was applying the special proximate cause standard in *Fields v. Twitter,* 881 F.3d 739 (9th Cir. 2018). The *Fields* standard only addressed liability under § 2333(a), which requires proof that the injury in question was "by reason of" the complained of conduct. *Gonzalez v. Google*, 335 F. Supp. 3d 1156, 1176 (N.D. Cal. 2018); *Fields*, 881 F. 3d at 744, 747-48. This Court did not decide whether the conduct alleged in the § 2333(d)(2) counts (claims one and two) were the proximate cause of the plaintiffs' injuries, because *Fields* did not address the proximate cause standard under that provision. 335 F. Supp. at 1176. Similarly, *Fields* did not address the proximate cause standard to be applied under French law or California law.

Second, Google in one passage describes the Supreme Court decision in this case only as "remanding" the case in light of *Twitter Inc. v. Taamneh.* (Google Opp. 5). But the Supreme Court also vacated the Ninth Circuit opinion in this case, 598 U.S. 617, 622 (2023), setting aside (without expressing any view regarding) the Ninth Circuit's § 230 opinion, and leaving the § 230 issue unresolved. A vacated decision, even a decision vacated on grounds other than the issue at hand, "has no precedential authority whatsoever." *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991); *see Quinn v. Robinson*, 783 F.2d 776, 779 n. 20 (9th Cir. 1986).

2
REPLY ON MOTION FOR LEAVE TO FILE A FOURTH
AMENDED COMPLAINT AND RELATED RELIEF
4:16-CV-3282(DMR)

## II. Leave to Amend the Complaint Is Appropriate Under Rule 15

Under Rule 15(a)(2) "[t]he court should freely give leave [to amend a pleading] when justice so requires." "This policy is to be applied with extreme liberality." *Norton v. LVNV Funding, LLC*, 2020 WL 2557003, at *2 (N.D. Cal. May 19, 2020) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted)). "[T]he Ninth Circuit has instructed that 'the court must remain guided by the underlying purpose of Rule 15…to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Wynne v. Audi of America*, 2022 WL 4281358, at *1 (N.D. Cal. Sept. 15, 2022) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quotation marks and citation omitted, alteration in original)). "Granting leave to amend does not necessarily mean that the underlying allegations ultimately have merit." *Lawman v. City and County of San Francisco*, 159 F. Supp. 3d 1130, 1155 (N.D. Cal. 2016) (quoting *FlatWorld Interactives LLC v. Apple Inc.*, 12–cv–01956–WHO, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6, 2013)). "Ultimately, '[t]he party opposing amendment bears the burden of showing why leave to amend should not be granted.'" *Mitchell v. County of Contra Costa*, 2022 WL 395287, at *5 (N.D. Cal. Aug. 30, 2022) (quoting *Microsoft Corp. v. Hon Hai Precision Indus. Co.*, No. 19-CV-01279-LHK, 2020 WL 836712, at *14 (N.D. Cal. Feb. 20, 2020) (citations omitted)).

*Foman v. Davis,* 317 U.S. 178 (1962) refers to several factors that might be considered in determining whether to grant a motion for leave to amend under Rule 15. "These factors do not 'merit equal weight,' and 'it is the consideration of prejudice to the opposing party that carries the greatest weight.' *Eminence Capital*, 316 F.3d at 1052. 'Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend.'" *GTE Mobilnet of California Limited Partnership v. City of Berkeley*, 2021 WL 308605, at *3 (N.D. Cal. Jan. 29, 2021) (quoting *Eminence Capital*) (emphasis in *Eminence*

*Capital*). "Prejudice is the 'touchstone of the inquiry under [R]ule 15(a).'" *Eminence Capital,* 316 F.3d at 1051 (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's Inc*., 238 F.3d 363, 368 (5th Cir.2001)). "While all the[] [*Foman*] factors are relevant, the crucial factor is the resulting prejudice to the opposing party. The…motion to amend should have been granted as there was no showing that [the defendant] would have been prejudiced thereby. While it is true that the motion was made five years after the third-party complaint had been filed, we know of no case where delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend." *Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir. 1973).

Google objects that it would be prejudiced as addition of the state and foreign law claims would force the Court to "readjudicate" issues that it has already decided. (Google Opp. 11). But the only causation issue which this Court previously adjudicated was whether claims three through six met the special *Fields* proximate causation standard. The Court deliberately did not adjudicate whether the third amended complaint adequately alleged proximate causation regarding claims one and two, because *Fields* did not address proximate cause under § 2333(d). There is no reason to assume the Court would in its 2018 opinion have decided whether a state or foreign law claim satisfied some non-*Fields* proximate causation standard. And this Court's previous opinions did not adjudicate any issue regarding what constitutes material support. This Court's earlier opinions deliberately opted to adjudicate only a few of the numerous objections raised by Google's motions to dismiss. In light of this Court's cautious approach in 2017-18, there is no reason to believe the Court would then have addressed additional objections regarding California or French law claims had they then been included in the earlier complaints. Issues not decided by this Court would not "have been part of the appeal." And although the Ninth Circuit "could have" resolved the correctness of this Court's application of *Fields*, the court of appeals expressly declined to do so. *Gonzalez v*

4

REPLY ON MOTION FOR LEAVE TO FILE A FOURTH
AMENDED COMPLAINT AND RELATED RELIEF
4:16-CV-3282(DMR)

*Google, Inc.,* 2 F.4th 871, 901 (2d Cir. 2021). Surely the court of appeals would not have addressed in the first instance issues that had never decided by this Court at all.

Google argues that it would be prejudiced by addition of the foreign law claim because it would be required to analyze and address issues regarding French law. (Google Opp. 11-12). But the fact that the foreign law claim is being raised now, rather than earlier, did not prejudice Google; addressing such a claim today is no more difficult than it would have been if the foreign law claim had been included in the original complaint. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 251 (1981), on which Google relies, did not hold that foreign law claims are inherently so difficult that federal courts should not hear them; the passages on which Google relies merely explained that the Supreme Court was rejecting a particular interpretation of *forum non conveniens* principles because it would be more difficult to administer. *De Fontbrune v. Wofsy*, 838 F.2d 992, 998 (9th Cir. 2016), on which Google also relies, did not hold that foreign law claims are too complex for federal courts to manage; rather, it explained that although more complex foreign law claims may need to be addressed at summary judgment, less complex foreign law issues can be resolved on a motion to dismiss. Rule 44.1 expressly guides federal district courts in addressing foreign law claims, recognizing that such claims are not uncommon and that they are well within the capacity of federal judges to resolve.

Google argues that under *AmerisourceBergen Corp. v. Dialysis W., Inc*. 465 F.3d 946, 953 (9th Cir. 2006), courts "inquire" whether the moving party knew earlier of the facts or theories raised in the amended pleading. (Google Opp. 8).[1] But *Amerisource* did not hold that a motion to amend

---

[1] Google does not argue that plaintiffs' counsel knew at the time of the third amended complaint about the specific provisions of California or French law now set out in the proposed fourth amended complaint. Google argues only that in 2018 plaintiffs knew that some other state or foreign country might have laws under which assistance to terrorist organizations would be actionable. (Google Opp. 9 n.1). But any first-year law student would have known that. If that circumstance would under

5

REPLY ON MOTION FOR LEAVE TO FILE A FOURTH
AMENDED COMPLAINT AND RELATED RELIEF
4:16-CV-3282(DMR)

could be denied based on delay alone. *Bowles v. Reade*, 198 F. 3d 752 (9th Cir. 1999), cited in *Amerisource* (465 F.3d at 949, 951) made clear that delay alone is not a basis for denying a Rule 15 motion in the absence of prejudice.

> Undue delay by itself…is insufficient to justify denying a motion to amend…. We have previously reversed the denial of a motion for leave to amend where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment.

198 F.3d at 757 (citing *DCD Programs, Ltd. v. Leighton*, 833 F.3d 183, 186 (9th Cir. 1987); see *id.* at 758 ("district court[] [has a] duty to make findings supported by the record showing that the motion was prejudicial to the defendant, was made in bad faith, or was futile."). Although the 1986 decision in *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986), disfavored amendments raising new legal theories that could have been known earlier (as would be true of almost all amendments raising new legal theories), both earlier and subsequent Ninth Circuit decisions have established that prejudice is the controlling consideration in resolving a Rule 15 motion to amend. *See Chou v. Charles Schwab & Co., Inc.*, 2023 WL 2674367, at *2 (9th Cir. 2023) (citing *Acri* for the proposition that motion to amend was properly denied because it "would prejudice" the defendant).

Google objects that plaintiffs delayed "for more than seven years" before seeking to amend their complaint to add the state and foreign law counts. (Google Opp. 9, 10). But for five of those seven years (from autumn 2018 to autumn 2023) this case was on appeal, and this Court would have lacked jurisdiction to consider a motion to amend. Google objects that plaintiffs "declined" the invitation in this Court's August 2018 opinion to amend their complaint. (Google Opp. 1, 10, 18).

---

Rule 15 require denial of a motion to amend a complaint to add a new legal theory, such motions would virtually never be granted.

But that 2018 invitation was expressly limited to amendments regarding revenue sharing. 335 F. Supp. 3d at 1179. Google objects that, following this Court's August 2017 opinion, plaintiffs could have amended their complaint to add the state law and foreign claims. (Google Opp. 6). But that 2017 opinion dismissed the complaint solely on the ground that the claims were barred by § 230, so adding the state and foreign law claims would have been ineffective. (Dkt. 110).[2]

Because this Court never decided whether Google's conduct constituted aiding and abetting within the meaning of § 2333(d)(2),[3] that problem regarding the § 2333(d)(2) claims did not arise in this case until the May 2023 Supreme Court decision in *Twitter, Inc. v. Taamneh*, 598 US. 471 (2023). At the February 2023 Supreme Court oral argument in this case, when Justice Barrett inquired how this case would be resolved if (as subsequently occurred) the Supreme Court ruled for the defendants in *Taamneh*, counsel for the *Gonzalez* plaintiffs responded that they would seek to amend their complaint to allege other claims. 2023 WL 9375455, at *59, *164. That was four months *before* the Supreme Court decision in *Taamneh* vitiated the federal claims in the instant case.[4]

Google objects that "[p]laintiffs offer no reasonable explanation of why, more than seven years into the litigation, Plaintiffs now seek to bring claims under California and French law for the first time." (Google Opp. 10). But the explanation is apparent from the history of this litigation. This Court never held that Google's conduct did not constitute aiding and abetting within the scope of

---

[2] See Google Opp. 18 (contending that if the § 230 defense applies to Google's actions, it would bar not only federal claims, but also state and foreign law claims).

[3] Thus, the addition of the state and foreign law claims would not have addressed "deficiencies identified by the district court." (Google Opp. 8).

[4] See *Trentacosta v. Frontier Pacific Aircraft Industries, Inc*., 812 F.2d 1553, 1561 (9th Cir. 1987) (granting motion to amend where "[plaintiff] sought leave to amend immediately after the court dismissed his [original] claim which heretofore had provided the only basis for the court's subject matter jurisdiction").

§ 2333(d), the issue on which the remaining counts one and two of the third amended complaint have now foundered. Amending the complaint to add the California and French law claims would have been ineffective after this Court's 2017 decision, was precluded by the terms of this Court's 2018 decision, and was jurisdictionally impossible during the five years this case was on appeal in the Ninth Circuit and the Supreme Court. Plaintiffs "now seek" to add the California and French law claims because only "now" would that amendment be both relevant (in the wake of *Taamneh*) and within the jurisdiction of this Court (following remand from the Ninth Circuit) to approve.

More broadly, Google argues that litigants should usually be forbidden to amend a pleading *after* a court has held that their original pleading was defective. (Google Opp. 7, 9). But district courts routinely permit litigants to do so, expressly inviting plaintiffs to offer an amended complaint when their original complaint was held insufficient, and permitting plaintiffs to do so. This Court often permits plaintiffs, following dismissal of a complaint, to submit an amended complaint, without requiring any showing that the amended pleading was based on newly discovered evidence or on a legal theory of which the plaintiff was previously unaware.[5] Permitting amendment in those circumstances is commonly precisely because doing so enables a litigant to replead in light of the court's opinion rejecting an earlier pleading. Under Google's proposed standard, post-dismissal amendments would be forbidden except in the rare case in which there is newly discovered evidence or in which plaintiff's counsel was somehow unaware of the new legal theory it seeks to offer. Such a legal rule would have the undesirable effect of requiring plaintiffs to frame complaints that allege

---

[5] E.g., *Johnson v. United States*, 2024 WL 85871, at *5 (N.D. Ca. Jan. 8, 2024); *Barker v. McFerran*, 2023 WL 6933357, at *7 (N.D. Cal. Oct 18, 2023); *Lempke-Vega v. Mercedes-Benz USA, LLC*, 2023 WL 5957175, at *6 (N.D. Cal. Sept. 12, 2023); *Ulloa v. Securitas Security Services USA, Inc.*, 2023 WL 5538276, at *3 (N.D. Cal. August 28, 2023); *Ray v. U.S. Bank Trust, NA*, 2023 WL 5498729, at *6 (N.D. Cal. August 23, 2023).

every known fact, and to plead (often in the alternative) every conceivable legal doctrine that might be relevant in light of some imaginable future opinion.[6]

### III. There Would Be Federal Jurisdiction Over the Proposed State and Foreign Law Claims

There would be federal question jurisdiction over the proposed hybrid state-federal claim. With regard to diversity, any defects in the proposed wording of the fourth amended complaint could be corrected through further pleading, although that would not be necessary if the Court concludes that there is federal question jurisdiction.

**Federal Jurisdiction.** *Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804 (1986) did not hold, as Google asserts, that unless there is a federal private cause of action and remedy, the existence of a "federal issue [in a state law claim] does not create federal question jurisdiction." (Google Opp. 13). *Merrell Dow* holds only that, in the absence of a federal private cause of action, federal question jurisdiction would not invariably exist "solely because" of the existence of a federal issue in a state law claim. 478 U.S. at 812.

The controlling standard regarding federal question jurisdiction over such hybrid claims is set out in the more recent decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005). *Grable* expressly rejected the contention that a federal element in a state law claim can never establish federal question jurisdiction in the absence of a federal private cause of action. 545 U.S. at 317. "*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of," whether federal

---

[6] Google objects that the proposed Fourth Amended Complaint as filed is not identical to the draft which plaintiffs' counsel reviewed with defense counsel. (Google Opp. 6). But this Court's October 18, 2023 order required only that plaintiffs' present to and discuss with defense counsel "a" proposed amended complaint. (Dkt. 151). That order did not forbid plaintiffs from improving the draft, including in response to objections defendant might raise to the proffered draft.

question jurisdiction exists. 545 U.S. at 318. The equally important considerations in determining the existence of federal question jurisdiction are whether federal government itself has a significant interest in the litigation, and whether recognizing federal question jurisdiction would have the untoward effect of transferring to federal court a substantial number of cases that otherwise would be pursued in, and belong in, state court. 545 U.S. at 314-17 ("the strength of the federal interest at stake and the implications of opening the federal forum"); *see Gunn v. Minton*, 568 U.S. 251, 260-64 (2013).

There is a compelling federal interest in this litigation. Google's earlier motions to dismiss raised important issues of statutory interpretation, which this Court did not resolve, regarding what constitutes a violation of § 2339A (and 2339B). (Dkt. 100, pp. 18-20; Dkt. 116, pp. 12-14). Google's brief notes the presence of that legal issue. (Google Opp. 11). Although the requisite federal interest is often established by the need to interpret federal law, it can also be show by the "importance of the issue to the federal system as a whole." *Gunn v. Minton*, 568 U.S. at 260. In this case, "the real-world" result (*id*. at 261) of a resolution of the underlying factual disputes—including revelation of how much assistance Google provided to ISIS, how much ISIS material was sent unrequested to users, and how much Google knew about the manner in which it was assisting ISIS--would be of manifest interest and concern to the United States intelligence agencies and the Department of Defense. The complaint alleges that Google, through YouTube, provided to ISIS massive assistance which enabled that terrorist organization to attract large numbers of terrorist volunteers and essential financial support, and to grow into a military force that overran much of Syria and Iraq, and was able to launch terror attacks in Europe. (4AC ¶¶ 197, 199, 205, 231, 241-43); *Gonzalez v. Google*, 2 F. 4th 871, 908-10 (9th Cir. 2021). Those conquests and terror attacks have forced the United States to spend tens of billions of dollars, and deploy thousands of members of our armed forces, to

suppress ISIS over a period of years. Several thousand members of the United States military remain deployed in Syria and Iraq for that purpose. All of this is far different from the minor legal malpractice claim at issue in *Gunn*, which was of interest only to the litigants. 586 U.S. at 61-62

Permitting a case such as this to be heard in federal court would not disrupt the normal allocation of responsibilities between state and federal courts. Disputes about assistance to foreign terrorist organizations are rarely if ever brought in state court. Such cases are thus unlike the "horde" of everyday tort actions regarding food and drugs that *Merrell Dow* recognized could be brought in federal rather than state courts if federal question jurisdiction could be established by asserting a violation of the federal Food Drug and Cosmetic Act. See *Grable*, 545 U.S. at 318.

**Diversity Jurisdiction**. Google raises a number of issues regarding diversity jurisdiction. (Google Opp. 13-14). All of those are matters that could be resolved by further pleading, as is explained below. If, however, this Court concludes that there is federal question jurisdiction, that additional pleading would not be necessary.

Plaintiffs Reynaldo Gonzalez and Jose Hernandez are citizens of Mexico, and have always been diverse from Google. (4 AC ¶¶ 17, 20). The original complaint incorrectly stated that Reynaldo Gonzalez was a citizen of the United States, but that error was omitted from the second and third amended complaints.

Plaintiff Nohemi Gonzalez was a citizen of California, and was not diverse from Google when she died. Plaintiff Beatriz Gonzalez in her capacity as representative of the estate of Nohemi Gonzalez is deemed a citizen of the state of California, and is not diverse from Google. 28 U.S.C. § 1332(c)(2). Where diversity jurisdiction would be defeated by the inclusion of a non-diverse party, that jurisdictional defect can be cured by dismissing the claims of any non-diverse party, so long as that party is not indispensable. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989);

*Lam v. JP Mogan Chase Bank NA*, 605 Fed. App'x 600, 602 (9th Cir. 2015); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150 (9th Cir. 1998); see Fed. R. Civ. P. 21; 28 U.S.C. § 1653. Neither of these plaintiffs is an indispensable party. Plaintiffs would move to dismiss these two plaintiffs if (in the absence of federal question jurisdiction) such dismissal were necessary to establish jurisdiction.

Plaintiffs Beatriz Gonzalez (in her personal capacity) and Paul Gonzalez are citizens of the United States. Plaintiff Rey Gonzalez is a permanent resident alien. All three of these plaintiffs were domiciled in California at the time they were added to the first amended complaint, but are now domiciled in New Mexico. As Google correctly observes, diversity is measured by the status of the parties at the time the (relevant) complaint was filed. (Google Opp. 14 n.3). Thus, as the proposed fourth amended complaint stands, they would be non-diverse. However, *Grupo Dataflux v. Atlas Glob. Grp. L.P.*, 541 U.S. 567 (2004), relied on by Google, makes clear that where a formerly non-diverse party has become diverse, the solution to the problem created by the time-of-filing rule is to dismiss the original complaint, and then immediately file a new complaint on behalf of the now diverse parties. 541 U.S. at 581-82. Because in this instance there are two remaining diverse parties, the appropriate solution here would be to dismiss the three formerly non-diverse plaintiffs, and then amend the complaint to add them back. That would be, as the Supreme Court noted, a formality, but it is a formality required to resolve the diversity jurisdiction problem. Plaintiffs would move to dismiss, and then join, these three plaintiffs if (because of the absence of federal question jurisdiction) that were necessary to establish jurisdiction.

The proposed fourth amended complaint refers to the residence of these three plaintiffs, rather than to their domicile or citizenship. As Google correctly notes, it is at the least preferable to allege domicile or state citizenship, rather than residence, because it is technically possible (although uncommon) for an individual residing in a state not to be a citizen or domiciliary of that state.

(Google Opp. 14). Google does not argue that this uncommon situation exists in this case (it does not), but if the complaint were re-pled to resolve the diversity issues noted above, plaintiffs would reword it to allege the citizenship or domicile of these plaintiffs.

## IV. This Court's August 2018 Decision Does Not Resolve Whether the Proposed State and Foreign Claims Sufficiently Allege Proximate Causation

Google asserts that "[t]he Court has already held that Plaintiffs' allegations fail to establish that Google's conduct proximately caused their injuries." (Google Opp. 15). That is not correct. This Court's prior opinion *only* addressed whether counts three through six, which arose under § 2333(a), satisfied the special proximate causation standard established by *Fields* for claims under that section. 335 F. Supp. 3d at 1176-79. *Fields* itself was avowedly an interpretation of the phrase "by reason of" in § 2333(a); the Ninth Circuit, based on earlier decisions construing that phrase in other statutes, had held that the phrase establishes a special "direct relationship" requirement. 881 F.3d at 744, 747-48. This Court's August 2018 opinion did not address the ordinary common law proximate causation standard, but instead concluded only that the complaint "does not meet the *Fields* standard of proximate cause. Specifically, the [third amended complaint] does not allege a direct relationship between the 'material support' that Google allegedly provided to ISIS and the Paris attack." 335 F. Supp. 3d at 1178.[7] Claims one and two of the third amended complaint, on the other hand, arose under § 2333(d), which *Fields* had not discussed. The Court in 2018 therefore expressly "d[id] not address the question of whether Plaintiffs adequately pleaded proximate causation as to the § 2333(d) claims [in counts one and two]." 335 F. Supp. 3d at 1176; see *id.* at 1179.

---

[7] 335 F. Supp. 3d at 1176 ("Google contends that section 2333(a)'s 'by reason of' language incorporates a proximate cause standard that requires a close causal connection: that the defendants' actions 'led directly' to Plaintiffs' injuries.' Mot. 18.").

Plaintiffs' proposed state law claim is subject only to ordinary proximate causation standards, not the more stringent *Fields* standard; the phrase "by reason of" is not part of the applicable state law. *See* Cal. Evid. Code § 669(a)(2). California has expressly rejected for state law tort claims the heightened "direct relationship" standard that is applied in federal RICO and Clayton Act cases, the very sources on which *Fields* was based. "The standard of proximate causation under RICO, as adopted from the Clayton Act, is not the same as the test for proximate cause under California negligence law." *Gervase v. Superior Court*, 31 Cal. App. 4th 1218, 1233 n. 9 (3d Dist. 1995); see *Fields*, 881 F.3d at 744 (relying on RICO and Clayton Act decisions).[8]

The authorities cited by Google regarding French law (Google Opp. 15) do not suggest it incorporates the special *Fields* proximate cause standard. To the contrary, those authorities noted that the French concept of "adequate causation" "can be analogized to the common law concept of proximate cause, and examines whether the injury resulted from the act was 'normally foreseeable, in the normal courts of things.'" *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 1, 13 (D.D.C. 2010) (quoting George A. Bermann & Etienne Picard, *Introduction to French Law* 237 (2008)).[9] Foreseeability is not the standard which *Fields* established, and that this Court applied in 2018, regarding § 2333(a) claims. Rather foreseeability is precisely the test which *Fields **rejected*** when it established the special "direct relationship" test that is applicable to § 2333(a) cases, and that was applied by this Court in 2018. *Fields*, 881 F.3d at 748 ("for purposes of the ATA, it is a direct

---

[8] *Gervase* refused to apply to state law tort claims the very Supreme Court decision on which *Fields* relied. *Compare Gervase*, 31 Cal. App. 4th at 1233 n. 9 (rejecting the standard in *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258 (1992)), *with Fields*, 881 F.3d at 745-58 (applying *Holmes* standard).

[9] In *Baarbe v. Syrian Arab Republic*, 679 F. Supp. 3d 303, 423-28 (E.D.N.C. 2023), the court applied French law to assistance of a terrorist organization without requiring a showing of proximate causation.

relationship, rather than foreseeability, that is required"); see *id.* at 744, 746-48. Similarly, foreseeability, which *Fields* rejects as a measure of proximate causation under § 2333(a), is the basic standard for determining proximate cause under California law. *California Medical Assn. v. Aetna Health of California, Inc.*, 14 Cal. 5th 1075, 1097, 532 P.3d 250, 265 (2023); *City of Oroville v. Superior Court*, 7 Cal. 5th 1071, 1094, 446 P.3d 304, 311 (2019); *Bigbee v. Pacific Tel & Tel. Co.*, 34 Cal. 3d 49, 56, 665 P.2d 947, 950 (1983); *see People v. Carney*, 14 Cal. 5th 1130, 1139, 532 P. 3d 696, 702 (2023).

**V.      Section 230**

The proposed amended complaint alleges that Google has recommended ISIS videos to users. (4AC ¶ 484; see 4AC ¶¶ 485, 504-04). Google does not object to this paragraph; it is taken verbatim from the third amended complaint. Google acknowledges that plaintiffs "previously argued" that recommendations are outside the scope of § 230. (Google Opp. 16). Indeed, whether recommendations are unprotected by § 230 was the very question presented which the Supreme Court agreed to hear, but ultimately did not decide.[10]

Google asserts, however, that "the proposed new claims are *not* premised on…algorithmic recommendation of ISIS content. While such allegations appear in the proposed complaint (e.g., 4AC ¶¶ 471, 484), they are conspicuously omitted from the operative paragraphs setting out the proposed new claims (see 4AC ¶¶ 512-535)." (Google Opp. 16) (emphasis in original). That is not correct. The allegations regarding both the French law claim (4AC ¶ 512) and the California law claim (4 AC ¶ 523) expressly "repeat and re-allege each and every allegation of the foregoing paragraphs…" Paragraph 484 is one of those foregoing paragraphs. And that is precisely how the third amended complaint asserted that the claims in that case encompassed the recommendation

---

[10] Petition for Writ of Certiorari, *Gonzalez v. Google*, i.

allegation, a pleading which Google agrees did sufficiently allege that those claims involved recommendations. (*See* 3AC ¶¶ 512, 534, 523, 556, 567, 579).[11]

The proposed amended complaint contains several paragraphs describing *how* Google recommended ISIS materials to users. According to the proposed amended complaint, Google did so by sending users both videos and "thumbnails" (video stills with captions) which the users had not requested. (4AC ¶¶ 491-495). The complaint asserts that this method of recommendation is not protected by § 230 because when Google does this it is not *acting as* an interactive computer service, as required by § 230. (4AC ¶ 495). Google does not object to consideration of these proposed additional allegations, or argue that they are prejudicial or untimely.[12] Rather, Google only contends that these additional allegations are irrelevant, resting on its erroneous contention that the proposed California law and French law claims fail to mention or rely on the plaintiffs' unresolved allegation that Google lost § 230 protection insofar as it recommended ISIS materials to users. (Google Opp. 16).

In the litigation of this case in the Supreme Court, a central legal issue in dispute regarding the status of recommendations under § 230 was whether Google was outside the scope of § 230 protection insofar as it had distributed to users videos or thumbnails which the users had not requested.[13] The briefing and argument in the Supreme Court posed two related issues. First, the parties disagreed about whether § 230 immunizes everything done by a social media company like

---

[11] In any event, the existence of such recommendations is not an element of the California law or French law claims, just as it was not an element of the earlier federal law claims. Rather, this allegation is a preemptive response to an anticipated § 230 affirmative defense.

[12] See Google Opp. 7 ("These vague allegations about YouTube's autoplay feature and video thumbnails…are not materially different from Plaintiffs' prior allegations about content recommendations").

[13] Pet. 31-32; Brief for Petitioners, 15, 44, 47; Brief for Respondent, 32, 36, 37; Reply Brief for Petitioners, 14-18.

Google, or only protects a defendant when it is *acting as* an "interactive computer service." *See* 49 U.S.C. 230(f)(2).[14] Second, the parties disagreed about whether a defendant would be acting as in an interactive computer service if it sent a user material which the user had not requested; that legal issue turns in part on the meaning of the statutory terms "user," "server," and "access." The Supreme Court did not resolve that or any other issues regarding the meaning of § 230.

The original more general allegation in the third amended complaint regarding recommendations of ISIS material was sufficient to pose those questions, which is why the parties addressed them in the Supreme Court. Proposed ¶¶ 491-495 are included to set out additional factual allegations that specifically frame those legal issues regarding the meaning of § 230.

Google at this juncture argues only (and incorrectly) that this legal issue has been abandoned. Google does not ask the Court to decide whether, if the allegations in ¶¶ 491-95 are correct, § 230 protection would in that regard be unavailable. And Google does not reiterate in this Court the legal arguments which it advanced in the Supreme Court last year about this pivotal issue. Under those circumstances, the pending motion for leave to amend the complaint is not the appropriate context in which to resolve this important legal issue.

Google has not forfeited its right to challenge the legal significance of ¶¶ 491-95; it has only chosen, for now, not to ask the Court to address that issue in the course of deciding whether to permit the plaintiffs to amend their complaint. The Court should not do so. If the motion to amend is granted, as we urge it should be, Google will be free to advance in this Court by appropriate motion the legal arguments which it made in the Supreme Court last year regarding whether the distribution

---

[14] The distinction is analogous to the difference between sovereign immunity, which applies to all actions naming the United States as a defendant, and prosecutorial immunity, which protects only conduct by a United States attorney acting in a prosecutorial role (e.g., filing charges, but not hiring staff).

of unrequested materials is protected by § 230. Plaintiffs may also choose to pose that issue by filing an appropriate motion for partial summary judgment.

Because the Ninth Circuit's decision regarding § 230 was vacated by the Supreme Court, it is not controlling here. *Durning v. Citibank, N.A.*, 950 F.2d at 1424 n.2. A vacated decision may be relied on to the extent that its reasoning provides a persuasive analysis of a particular legal issue. *Netzer v. City of Pasadena*, 1992 WL 107058, at *2 (9th Cir. 1992)[15]; *Adams v. C.I.R.*, 2023 WL 368464, at *6-*7 (U.S. Tax Ct. Jan 24, 2023).[16] But because the Ninth Circuit's opinion contained little discussion of whether recommendations fall outside the protections of § 230, that opinion has likely to have little bearing on the significance of ¶¶ 491-495.

### VI. Conclusion

For these reasons Plaintiffs respectfully seek leave to file the attached Fourth Amended Complaint in this case.

---

[15] "A vacated opinion has no precedential authority. See *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n. 2 (9th Cir.1991) ('A decision may be *reversed* on other grounds, but a decision that has been *vacated* has no precedential authority whatsoever.') (original emphasis). However, a decision vacated upon a ground independent of that for which it is cited may still have persuasive effect. See, e.g., *United States v. Walgren,* 885 F.2d 1417, 1423 & n. 8 (9th Cir.1989) (vacated decision's analysis considered but rejected as unpersuasive)."

[16] "The view of the Supreme Court and virtually all the courts of appeals is that when a judgment is vacated, the vacatur deprives the underlying opinion of any precedential effect…. Although an opinion issued in connection with a vacated judgment retains no precedential effect, if the judgment is vacated for reasons unrelated to the opinion's analysis of an issue, nothing precludes a future court from considering that analysis as persuasive authority."

Dated: Brooklyn, New York
       May 3, 2024

Respectfully submitted,

| **THE BERKMAN LAW OFFICE, LLC** | **Excolo Law, PLLC** |
|---|---|
| By: /S/Robert J. Tolchin | By: /S/Keith Altman |
| Robert J. Tolchin, Esq. | Keith Altman (SBN 257309) |
| *(Admitted pro hac vice)* | 26700 Lahser Road, Suite 401 |
| 829 East 15th Street, Box 7 | Southfield, MI 48033 |
| Brooklyn, New York 11230 | 516-456-5885 |
| 718-855-3627 | Email: kaltman@lawampmmt.com |
| rtolchin@berkmanlaw.com | |
| | |
| **WEINSTOCK MANION,** | **1-800-LAWFIRM** |
| **A Law Corporation** | Ari Kresch (*pro hac vice*) |
| Diane Park, Esq. | 26700 Lahser Road, Suite 401 |
| M. Neil Solarz, Esq. | Southfield, MI 48033 |
| 1875 Century Park East, Suite 2000 | 516-456-5885 |
| Los Angeles, California 90067 | 800-LawFirm |
| (310) 553-8844 | Email: akresch@1800lawfirm.com |
| | |
| *Attorneys for Plaintiffs The Estate of Nohemi Gonzalez, Beatriz Gonzalez (Individually and as the Administrator of the Estate of Nohemi Gonzalez), Jose Hernandez, Rey Gonzalez, and Paul Gonzalez* | *Attorneys for Plaintiff Reynaldo Gonzalez* |

19
REPLY ON MOTION FOR LEAVE TO FILE A FOURTH
AMENDED COMPLAINT AND RELATED RELIEF
4:16-CV-3282(DMR)

1303049.1