1

2

3

4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    REYNALDO GONZALEZ, et al.,              Case No. 16-cv-03282-DMR

8                  Plaintiffs,               **ORDER DENYING PLAINTIFFS'**
                                             **MOTION FOR LEAVE TO FILE A**
9           v.                               **FOURTH AMENDED COMPLAINT**

10   GOOGLE, INC.,                           Re: Dkt. No. 154

11                 Defendant.

12          In this action, Plaintiffs Reynaldo Gonzalez; the Estate of Nohemi Gonzalez; Beatriz

13   Gonzalez, individually and as the representative of the Estate of Nohemi Gonzalez; José

14   Hernandez; Rey Gonzalez; and Paul Gonzalez seek to hold Defendant Google, Inc. ("Google")

15   liable for the November 2015 death of Nohemi Gonzalez during a coordinated terrorist attack by

16   individuals associated with the Islamic State of Iraq and Syria ("ISIS") in Paris.  Plaintiffs now

17   move for leave to file a fourth amended complaint ("FAC").  [Docket Nos. 154, 154-1 (Prop.

18   FAC).]  Google opposes.  [Docket No. 157.]  This matter is suitable for determination without oral

19   argument.  Civ. L.R. 7-1(b).  For the following reasons, the motion is denied.

20   I.     **BACKGROUND AND PROCEDURAL HISTORY**

21          A.      **District Court Proceedings**

22          Plaintiff Reynaldo Gonzalez filed this lawsuit in June 2016 against Google, Twitter, Inc.

23   ("Twitter"), and Facebook, Inc. ("Facebook").  He alleged claims under the Anti-Terrorism Act

24   ("ATA"), 18 U.S.C. § 2333, on the theory that social media platforms, including YouTube, a free

25   online video platform owned and operated by Google, played a role in the rise of ISIS and in

26   facilitating its international terrorist attacks.  This included ISIS's November 2015 attack in Paris

27   during which his daughter Nohemi Gonzalez was murdered.  Defendants jointly moved to dismiss,

28   and Reynaldo Gonzalez filed an amended complaint pursuant to Federal Rule of Civil Procedure

United States District Court
Northern District of California

15(a)(1)(B) that added claims in his capacity as successor-in-interest to Nohemi Gonzalez's estate ("the Estate") and Beatriz Gonzalez, Nohemi Gonzalez's mother, as a nominal defendant under California Code of Civil Procedure section 382.  [Docket Nos. 36, 55 (Am. Compl.) ¶ 13.]  Defendants again jointly moved to dismiss the amended complaint.  Beatriz Gonzalez was appointed administrator of the Estate in January 2017 and Reynaldo Gonzalez, Beatriz Gonzalez, and the Estate subsequently dismissed their claims against Twitter and Facebook.  [Docket Nos. 74, 75.]  In April 2017, the court granted an unopposed motion for leave to file a second amended complaint against Google.  [Docket No. 94.]

   Reynaldo Gonzalez, the Estate, and Beatriz Gonzalez filed the second amended complaint ("SAC") in April 2017, adding as Plaintiffs Nohemi Gonzalez's brothers Rey Gonzalez and Paul Gonzalez and Nohemi Gonzalez's stepfather José Hernandez.  [Docket No. 95 (SAC).]  The SAC asserted four claims under the ATA civil remedy provisions, 18 U.S.C. § 2333(a) and (d).[1]  Claims 1 and 2 alleged that Google was liable under 18 U.S.C. § 2333(d) for aiding and abetting acts of international terrorism and for conspiring with ISIS in furtherance of ISIS's acts of international terrorism.  Claim 3 alleged that Google was liable under section 2333(a) for violating 18 U.S.C. § 2339A, a federal criminal statute which prohibits knowingly providing "material support and

---

[1] 18 U.S.C. § 2333(a) provides for a private right of action for damages sustained in an act of international terrorism:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).  Section 2333(d) provides that liability attaches to those who aid or abet an act of international terrorism or conspire with a person who commits such an act:

> In an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that has been designated as a foreign terrorist organization . . . liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

18 U.S.C. § 2333(d).

2

1    resources" to terrorists.  Claim 4 alleged that Google was liable under section 2333(a) for violating

2    18 U.S.C. § 2339B(a)(1), which prohibits "knowingly provid[ing] material support or resources"

3    to a designated foreign terrorist organization.

4            Google moved to dismiss the SAC on the grounds that the claims are barred by Section

5    230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230(c)(1), which protects

6    from liability "(a) a provider or user of an interactive computer service (b) that the plaintiff seeks

7    to treat as a publisher or speaker (c) of information provided by another information content

8    provider."  *Fields v. Twitter*, 200 F. Supp. 3d 964, 969 (N.D. Cal. 2016) (citing *Barnes v. Yahoo!,*

9    *Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009)).  Google also argued that the claims were

10   insufficiently pleaded.  The court granted the motion in October 2017, concluding that the claims

11   were barred by Section 230 and granting leave to amend.  *Gonzalez v. Google, Inc.*, 282 F. Supp.

12   3d 1150, 1171 (N.D. Cal. 2017).

13           Plaintiffs filed a third amended complaint ("TAC") in November 2017.  [Docket No. 111.]

14   The TAC alleged four claims for relief under the ATA that were identical or nearly identical to the

15   claims alleged in the SAC (claims 1-4) and added a new theory supporting claims 3 and 4 based

16   upon Google's alleged revenue sharing with ISIS.  The TAC also added two new claims for relief

17   under section 2333(a): claim 5 was for concealment of material support and resources to a

18   designated foreign terrorist organization in violation of 18 U.S.C. § 2339C(c) and claim 6 was for

19   violation of terrorism sanctions regulations issued pursuant to the International Emergency

20   Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, 31 C.F.R. Part 594.

21           Google again moved to dismiss all of Plaintiffs' claims as barred by Section 230 of the

22   CDA and on the ground that the claims were insufficiently pleaded.  The court granted the motion

23   to dismiss the TAC in August 2018.  *Gonzalez v. Google, Inc.* ("*Gonzalez I*"), 335 F. Supp. 3d

24   1156 (N.D. Cal. 2018).  The court found that, except as to the new revenue-sharing allegations,

25   claims 1 through 4 and claims 5 and 6 fell "within the scope of section 230(c)(1)'s grant of

26   immunity and are therefore barred."  *Id.* at 1174-75.

27           In addition, the court held that the TAC failed to state direct liability claims under section

28   2333(a) for failure to allege proximate causation under applicable Ninth Circuit authority (claims

United States District Court
Northern District of California

United States District Court
Northern District of California

3-6).  *See id*. at 1176-79 (discussing *Fields v. Twitter*, 881 F.3d 739, 744, 748-49 (9th Cir. 2018)).  Accordingly, the court dismissed claims 3-6, including Plaintiffs' revenue sharing claims, "for failure to adequately plead proximate causation."  *Id*. at 1179.  As Plaintiffs had already been given an opportunity to amend the complaint to avoid Section 230 immunity, the court dismissed all claims other than the revenue sharing claims with prejudice.  It granted Plaintiffs "one final opportunity" to amend the revenue sharing claims.  *Id*.  Plaintiffs did not file an amended complaint by the court-ordered deadline and the court entered judgment for Google on August 31, 2018.  [Docket No. 130.]  Plaintiffs appealed.

**B.      Ninth Circuit Proceedings**

In June 2021, the Ninth Circuit affirmed in a consolidated opinion that addressed this case along with *Taamneh v. Twitter*, 17-CV-04107-EMC (N.D. Cal.), and *Clayborn v. Twitter*, Nos. 17-CV-06894-LB (N.D. Cal.), 18-CV-00543-LB (N.D. Cal.), two similar cases alleging that Google, Twitter, and Facebook were liable for terrorist attacks committed by ISIS supporters around the world.  *Gonzalez v. Google LLC* ("*Gonzalez II*"), 2 F.4th 871 (9th Cir. 2021).  The Ninth Circuit affirmed the dismissal of Plaintiffs' ATA claims, holding that Section 230 barred those claims except to the extent that they were based on allegations that Google shared advertising revenue with ISIS because the "revenue-sharing allegations are not directed to the publication of third-party information."  *Id*. at 897-98.  The court next held that the revenue-sharing allegations failed to adequately allege "the requirements necessary to establish direct liability for an act of international terrorism pursuant to § 2333(a)."  *Id*. at 901 (citing 18 U.S.C. § 2331(1)).  The court also held that Plaintiffs failed to state a claim for secondary liability under section 2333(d)(2) for aiding and abetting an act of international terrorism because the TAC did not allege that the purported assistance was "substantial."  *Id*. at 906-07.  Finally, the court held that Plaintiffs failed to state a claim for secondary liability under section 2333(d)(2) for conspiracy because the allegations in the TAC did not "plausibly suggest that Google reached an agreement with ISIS to carry out the Paris Attacks that caused" Nohemi Gonzalez's death.  *Id*. at 907.

In addressing *Taamneh*, the Ninth Circuit held that the operative complaint stated an aiding-and-abetting claim under the ATA against Twitter, Google, and Facebook based on

4

1    allegations that the defendants knowingly assisted ISI and that their assistance was substantial. *Id*.

2    at 908-10.  The court affirmed the dismissal of the *Clayborn* plaintiffs' aiding-and-abetting claim

3    on the ground that the operative complaint did not "plausibly allege that ISI committed, planned,

4    or authorized the" fatal shooting at issue. *Id*. at 911-12.

5            **C.**      **Supreme Court Proceedings**

6           The *Gonzalez* Plaintiffs sought review in the Supreme Court of the Ninth Circuit's

7    application of Section 230, and the *Taamneh* Defendants sought review of the Ninth Circuit's

8    interpretation of the ATA's aiding-and-abetting provision. *See* Opp'n 5.  The Supreme Court

9    granted both petitions.

10          The Supreme Court decided both cases in May 2023.  In *Twitter, Inc. v. Taamneh*, 598

11   U.S. 471 (2023), the Court reversed the Ninth Circuit's ruling on the merits of the *Taamneh*

12   plaintiffs' aiding-and-abetting theory under the ATA.  The Court held that to state an aiding-and-

13   abetting claim under the ATA, the plaintiffs must plausibly allege that "defendants gave such

14   knowing and substantial assistance to ISIS that they culpably participated in" the "act of

15   international terrorism that injured the plaintiffs." *Id*. at 497.  The Court described "the

16   fundamental question of aiding-and-abetting liability" as follows: "Did defendants consciously,

17   voluntarily, and culpably participate in or support the relevant wrongdoing?" and concluded that

18   the answer was no. *Id*. at 505.

19          The Court also affirmed the Ninth Circuit's holding that the revenue-sharing allegations

20   against Google failed to state an aiding-and-abetting claim because there were no allegations that

21   any revenue sharing amounted to "substantial assistance" to "the [particular terrorist] attack" that

22   injured plaintiffs or to "every single terrorist act committed by ISIS." *Id*. at 505-06.  The Court

23   reversed the judgment without remanding or giving the *Taamneh* plaintiffs any further opportunity

24   to amend their complaint. *Id*. at 506.

25          The Supreme Court did not reach whether Section 230 barred Plaintiffs' claims in a

26   separate opinion in *Gonzalez*.  *Gonzalez v. Google LLC* ("*Gonzalez III*"), 598 U.S. 617, 622

27   (2023).  It noted that "Plaintiffs did not seek review of the Ninth Circuit holdings regarding their

28   revenue-sharing claims," but that "[i]n light of those unchallenged holdings and [its] disposition of

United States District Court
Northern District of California

*Twitter* . . . it has become clear that plaintiffs' complaint—independent of § 230—states little if any claim for relief." *Id.*  The Court made clear that it was "not resolv[ing] either the viability of plaintiffs' claims as a whole or whether plaintiffs should receive further leave to amend." *Id.*

### D.    Proceedings on Remand

On July 3, 2023, the Ninth Circuit remanded the case to this court.  [Docket No. 145.]  The court held a case management conference on October 18, 2023 at which it ordered Plaintiffs to provide Google with a proposed Fourth Amended Complaint by December 18, 2023 and ordered the parties to meet and confer prior to the filing of a motion for leave to amend.  [Docket No. 151.]  The court subsequently extended the December 18, 2023 deadline at Plaintiffs' request and set an extended briefing schedule on any motion for leave to amend.  [Docket Nos. 152, 153.]

On February 29, 2024, Plaintiffs filed their motion for leave to amend along with a proposed FAC.  The court extended the deadline for Plaintiffs' reply and continued the hearing on the motion at Plaintiffs' request.  [Docket No. 161.]  Plaintiffs raised arguments and authority on reply regarding the court's subject matter jurisdiction over the proposed FAC to which Google did not have an opportunity to respond.  Accordingly, the court ordered Google to file a surreply responding to Plaintiffs' arguments regarding subject matter jurisdiction and continued the hearing on the motion to July 11, 2024.  [Docket No. 163.]  Google timely filed its surreply.  [Docket No. 165.]

### E.    Allegations in the Proposed FAC

The proposed FAC adds new allegations regarding Google's "distribut[ion] [of] materials that are not requested by users," *see* Prop. FAC ¶¶ 491-95, and alleges two claims, both of them new.  First, it alleges a claim under French law, Article 1382 of the Code Civil.  According to Plaintiffs, Article 1382 provides, "[e]very act whatever of man that causes damage to another, obliges him by whose fault it occurred to repair it." *Id.* at ¶¶ 513, 514.  The proposed FAC alleges that Google "committed 'fault' under French law by failing and refusing to regulate, control, limit, and remove YouTube content which encouraged terrorist action" and that Plaintiffs were injured as a result.  *Id.* at ¶¶ 520, 521.  Second, the proposed FAC alleges negligence under California law, including a theory of negligence per se under California Evidence Code section 669 that is

1    based on 18 U.S.C. § 2339A.  *Id*. at ¶¶ 524-34.

2    ## II.     LEGAL STANDARD

3            Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter

4    of course, at least until the defendant files a responsive pleading.  Fed. R. Civ. P. 15(a)(1).  After

5    that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be

6    given "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied

7    with extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir.

8    2003) (quotation omitted).  In the absence of an "apparent" reason, such as undue delay, bad faith

9    or dilatory motive, prejudice to the opposing party, futility of the amendments, or repeated failure

10   to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district

11   court to refuse to grant leave to amend a complaint.  *Foman v. Davis*, 371 U.S. 178, 182 (1962);

12   *Lockheed Martin Corp. v. Network Sols., Inc*., 194 F.3d 980, 986 (9th Cir. 1999).  These factors do

13   not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries

14   the greatest weight."  *Eminence Capital*, 316 F.3d at 1052.  "Granting leave to amend does not

15   necessarily mean that the underlying allegations ultimately have merit."  *FlatWorld Interactives*

16   *LLC v. Apple Inc*., 12-CV-01956-WHO, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6, 2013).

17   "Rather, '[a]bsent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a

18   presumption under Rule 15(a) in favor of granting leave to amend.'"  *Id*. (quoting *Eminence*

19   *Capital*, 316 F.3d at 1052).

20   ## III.    DISCUSSION

21           Plaintiffs' argument in favor of amendment is brief: they contend that they "reasonably

22   believed" that the ATA, 18 U.S.C. § 2333, "was uniquely adapted to their grievance," but the

23   Supreme Court's decision in Twitter "greatly limited" the statute "resulting in Plaintiffs being

24   unable to state a viable claim under the now-limited § 2333."  Mot. 3.  They state, "[n]ow that §

25   2333 has been removed from the picture," they seek to file the FAC "presenting their grievance

26   through the lens of other causes of action—one under French law, and one a hybrid state-federal

27   claim of negligence under California law with embedded federal law issues."  *Id*.  Plaintiffs

28   acknowledge that they "could theoretically have pleaded these causes of action before," but

United States District Court
Northern District of California

7

1   contend that "doing so before the Supreme Court's decision in Twitter would have been

2   counterintuitive, since § 2333 was such a perfect fit for [their] claims." *Id*. Plaintiffs do not

3   address any of the Rule 15(a) factors.

4       Google opposes the motion. It argues that the proposed amendment is futile for several

5   reasons, including because the court lacks subject matter jurisdiction over the proposed FAC.

6   Google also argues that amendment should be denied because Plaintiffs unduly delayed asserting

7   the new claims and Google would be prejudiced by the amendment. The court first addresses

8   whether it would have subject matter jurisdiction over the proposed FAC.

9       Plaintiffs' proposed FAC alleges two claims: violation of the French Code Civil and

10  negligence under California law. It alleges that the court has subject matter jurisdiction based on

11  federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. §

12  1332, and that it has supplemental jurisdiction "over any state-law claims" under 28 U.S.C. §

13  1367. Prop. FAC *Id*. at ¶¶ 26-28.[2] On reply, Plaintiffs rely only on federal question and diversity

14  jurisdiction. *See* Reply 9-13.

15      **A. Federal Question Jurisdiction**

16      The proposed FAC alleges, "[t]his Court has jurisdiction over this matter pursuant to 28

17  U.S.C. § 1331, as Plaintiff's [sic] state law cause of action [for negligence] turns on embedded

18  issues of federal law and is therefore a hybrid state-and-federal law claim." Prop. FAC ¶ 27. As

19  noted, the proposed FAC alleges a theory of negligence per se based on 18 U.S.C. § 2339A. *Id*. at

20  ¶¶ 524-34.[3] Under the doctrine of negligence per se, the standard of conduct set forth in a relevant

21  statute, ordinance, or regulation is adopted as the duty of care, and negligence is presumed when

22  the statute or regulation is violated. *Jones v. Awad*, 39 Cal. App. 5th 1200, 1210 (2019)

23  (discussing Cal. Evid. Code § 669). "Negligence per se is an evidentiary doctrine, rather than an

24  independent cause of action." Plaintiffs argue that Google was negligent because it violated the

25  _____

26  [2] The proposed FAC also alleges jurisdiction under the ATA, 18 U.S.C. §§ 2333, 2334, but does
    not allege a claim under that statute. Plaintiffs do not argue on reply that subject matter

27  jurisdiction exists under the ATA.

28  [3] Plaintiffs do not argue that their claim based on French law gives rise to federal question
    jurisdiction.

United States District Court
Northern District of California

1    duty of care set forth in 18 U.S.C. § 2339A, which criminalizes knowingly providing "material

2    support and resources" to terrorists.  The parties dispute whether this proposed claim gives rise to

3    federal question jurisdiction under 28 U.S.C. § 1331.

4        "Article III of the Constitution gives the federal courts power to hear cases 'arising under'

5    federal statutes."  *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 807 (1986).  In *Merrell*

6    *Dow*, the Supreme Court held that "a complaint alleging a violation of a federal statute as an

7    element of a state cause of action, when Congress has determined that there should be no private,

8    federal cause of action for the violation, does not state a claim 'arising under the Constitution,

9    laws, or treaties of the United States.'"  *Id*. at 817 (quoting 28 U.S.C. § 1331) (state claim based in

10   part on allegation that drug company misbranded drug in violation of federal law and was thus

11   presumptively negligent under Ohio law did not arise under federal law).  In *Grable & Sons Metal*

12   *Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005), the Court

13   clarified that in federal question cases, the relevant inquiry is whether "a state-law claim

14   necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum

15   may entertain without disturbing any congressionally approved balance of federal and state

16   judicial responsibilities."  Importantly, *Grable* held that in its entirety, *Merrell Dow* was not to the

17   contrary.  *Id*. at 316-18.  "*Merrell Dow* thought it improbable that the Congress, having made no

18   provision for a federal cause of action, would have meant to welcome any state-law tort case

19   implicating federal law 'solely because the violation of the federal statute is said to [create] a

20   rebuttable presumption [of negligence] . . . under state law.'"  *Id*. at 319 (alterations in original)

21   (quoting *Merrell Dow*, 478 U.S. at 811-12).  "*Merrell Dow*'s analysis thus fits within the

22   framework of examining the importance of having a federal forum for the issue, and the

23   consistency of such a forum with Congress's intended division of labor between state and federal

24   courts."  *Id*.

25       The Supreme Court has explained that, for *Grable* purposes, a substantial federal question

26   would be at issue if resolution of the federal question would be both "[1] dispositive of the case

27   and . . . [2] controlling in numerous other cases."  *See Empire HealthChoice Assurance, Inc. v.*

28   *McVeigh*, 547 U.S. 677, 700 (2006).  For example, in *Grable,* a substantial federal question

9

existed because it appeared that the only issue contested in the case was whether the IRS had complied with a federal statute and the federal question "presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.'" *Id.* (citations omitted). In contrast, a substantial federal question is less likely to exist where a case is "fact-bound and situation specific." *Empire*, 547 U.S. at 701. *See, e.g., City of Oakland v. BP PLC*, 969 F.3d 895, 906-07 (9th Cir. 2020) (holding state law claim for public nuisance that purportedly "implicates a variety of 'federal interests,' including energy policy, national security, and foreign policy" did not raise a substantial question of federal law; "a state-law claim that is 'fact-bound and situation-specific' is not the type of claim for which federal-question jurisdiction lies."). Under *Grable*, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314).

Like the state law claim at issue in *Merrell Dow*, Plaintiffs' proposed negligence claim rests in part on the allegation that Google violated a federal statute and thus was presumptively negligent under state law. Plaintiffs do not distinguish *Merrell Dow* or cite any cases supporting finding federal question jurisdiction on similar facts. *See, e.g., Hawkins v. Kaiser Permanente Sacramento*, No. 22-cv-00034-KJM-JDP (PS), 2024 WL 494022, at *3 (E.D. Cal. Feb. 8, 2024) (holding state law negligence claim based on alleged violations of federal Emergency Medical Treatment and Labor Act "does not raise a substantial federal issue such that federal question jurisdiction exists over their state-law tort claim."). Instead, they focus on *Grable*.

Under *Grable's* four-part test to determine whether jurisdiction is proper, the federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. All four requirements must be satisfied to establish that jurisdiction is proper. *See id*. Plaintiffs address the third and fourth requirements, arguing that "[t]here is a compelling federal interest in this litigation" because "revelation of how much assistance Google provided to ISIS, how much ISIS material was sent unrequested to users, and how much Google knew about the

manner in which it was assisting ISIS . . . would be of manifest interest and concern to the United States intelligence agencies and the Department of Defense."  They also contend that "[d]isputes about assistance to foreign terrorist organizations" are sufficiently rare so that permitting this case to be heard in federal court "would not disrupt the normal allocation of responsibilities between state and federal courts."  Reply 9-10.  Plaintiffs do not address the first and second requirements, which alone is fatal to their argument.

The first requirement, that the federal issue must be "necessarily raised," is not satisfied here.  "[O]riginal federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims[.]" *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 13 (1983).  "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal-question jurisdiction does not attach because federal law is not a necessary element of the claim." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. 2012) (quoting *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996)).  In this case, the duty that supports Plaintiffs' proposed negligence claim is grounded in both state and federal law.  *See* Prop. FAC ¶ 524 (alleging Google owed Plaintiffs "a duty of care under California law not to assist individuals or organizations who might use that assistance to engage in terrorist violence . . .").  Therefore, the "necessarily raised" requirement is not satisfied because Plaintiffs could prevail on their proposed negligence claim without relying on federal law.

Additionally, the federal issue is not "substantial" for purposes of federal question jurisdiction.  "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit[.]" *Gunn*, 568 U.S. at 260.  Rather, "[t]he substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole," *id.*, and federal issues are not substantial if they are "fact-bound and situation-specific." *City of Oakland*, 969 F.3d at 905.  The issue of whether Google is liable for negligence based on violations of 18 U.S.C. § 2339A is not a "pure issue of law" that would be "both dispositive of the case and . . . controlling in numerous other cases." *Id.*  Indeed, Plaintiffs point to the various facts about ISIS

11

1   and Google they hope to reveal through this case; this only serves to highlight that the case will be

2   driven by its specific facts and circumstances.

3        In sum, Plaintiffs do not allege a basis for federal question jurisdiction under *Grable*.

4   **B.     Diversity Jurisdiction**

5        Federal subject matter jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity

6   of citizenship and an amount in controversy in excess of $75,000.  Parties are diverse only when

7   the parties are "citizens of different states."  28 U.S.C. § 1332(a)(1).  A natural person's state

8   citizenship is determined by his or her state of domicile.  *Kanter v. Warner-Lambert Co.*, 265 F.3d

9   853, 857 (9th Cir. 2001).  "A person's domicile is her permanent home, where she resides with the

10  intention to remain or to which she intends to return.  A person residing in a given state is not

11  necessarily domiciled there, and thus is not necessarily a citizen of that state." *Id.* (internal citation

12  omitted).

13       To establish diversity of citizenship, the proposed FAC must allege that at the time of

14  filing, Plaintiffs were not citizens of California or Delaware, the states of Google's citizenship.

15  *See* Prop. FAC ¶ 23; *see Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004)

16  ("all challenges to subject-matter jurisdiction premised upon diversity of citizenship [are

17  measured] against the state of facts that existed at the time of filing").  The proposed FAC does

18  not do so.  "To be a citizen of a state, a natural person must first be a citizen of the United States."

19  *Kanter*, 265 F.3d at 857.  The proposed FAC alleges that Plaintiffs Reynaldo Gonzalez, Rey

20  Gonzalez, and José Hernandez are citizens of Mexico.  Prop. FAC ¶¶ 17, 20, 21.[4]  However, even

21  though it alleges U.S. citizenship for Plaintiffs Beatriz Gonzalez and Paul Gonzalez, it does not

22  state their state citizenship now or at the time of filing.  *See id.* at ¶¶ 19, 22.  The proposed FAC's

23  failure to allege their states of residence is "fatal" to Plaintiffs' assertion of diversity jurisdiction.

24  *See Kanter*, 265 F.3d at 858.

25       As to Nohemi Gonzalez, the proposed FAC alleges only that she was a U.S. citizen and

26  resided in France at the time of her death.  Prop. FAC ¶ 18.  However, it also alleges that she was

27

28  [4] Plaintiffs previously alleged that Reynaldo Gonzalez and José Hernandez are U.S. citizens.  *See* Compl. ¶ 9; Am. Compl. ¶ 9; SAC ¶ 27; TAC ¶ 27.

12

California-born "student at California State University Long Beach spending a semester abroad" in Paris at the time of her death. *Id*. at ¶¶ 18, 420, 422.  Accordingly, Google argues that "[n]o allegations suggest that she would have been a citizen of any state other than California, making the legal representative of her estate a California citizen" only and defeating diversity.  Opp'n 14.

In their reply, Plaintiffs admit that complete diversity of citizenship does not exist because Nohemi Gonzalez was a citizen of California at the time of her death and Beatriz Gonzalez, in her capacity as the Estate's representative, is deemed a citizen of California.  Reply 11.  They also admit that Beatriz Gonzalez (in her personal capacity) and Paul Gonzalez were domiciled in California at the time they were added to the FAC, although they contend that Beatriz Gonzalez and Paul Gonzalez are now "domiciled in New Mexico." *Id*. at 12.  In other words, Plaintiffs admit that the requirements of diversity jurisdiction are not satisfied.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 553 (2005) ("the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action.").  Nonetheless, they argue that the "jurisdictional defect can be cured" by dismissing the Estate and Beatriz Gonzalez in her capacity as its representative from the lawsuit under Federal Rule of Civil Procedure 21, arguing that "[n]either of these plaintiffs is an indispensable party." *Id*. at 11-12.

Rule 21 provides that a court may sua sponte "at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.  Rule 21 "grants a federal district or appellate court the discretionary power to perfect its diversity jurisdiction by dropping a nondiverse party provided the nondiverse party is not indispensable to the action under Rule 19." *Sams v. Beech Aircraft*, 625 F.2d 273, 277 (9th Cir. 1980).  Under Federal Rule of Civil Procedure 19(b), there are four factors for determining whether a party is "indispensable":

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided . . . ; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*White v. Univ. of Cal.*, 765 F.3d 1010, 1027-28 (9th Cir. 2014).  Plaintiffs fail to address any of the

1   foregoing factors, and Google disputes that the Estate and Beatriz Gonzalez in her capacity as its

2   representative are not indispensable parties. *See* Surreply 3-4.

3          There are other diversity problems. As noted, Plaintiffs admit that Beatriz Gonzalez (in

4   her personal capacity) and Paul Gonzalez were domiciled in California at the time of filing and

5   thus citizens of California. *See* Reply 12. Plaintiffs propose dropping them as parties and then

6   amending the FAC to add them back, citing *Grupo*. *Id*. But *Grupo* does not support such a move.

7   While acknowledging that dismissal of a party that destroys diversity is a "method of curing a

8   jurisdictional defect [that] had long been an exception to the time-of-filing rule," 541 U.S. at 572,

9   *Grupo* held that dismissal for lack of subject-matter jurisdiction was the only option available

10  where "[t]he purported cure arose not from a change in the parties to the action, but from a change

11  in the citizenship of a continuing party." *Id*. at 574-75. *Grupo* reaffirmed the time-of-filing rule,

12  under which courts measure "challenges to subject-matter jurisdiction premised on diversity of

13  citizenship against the state of facts that existed at the time of filing." *Id*. at 571.

14         In sum, Plaintiffs have not shown that the Estate and Beatriz Gonzalez in her capacity as

15  its representative are dispensable parties. Moreover, the parties were not diverse at the time of

16  filing. Accordingly, the court concludes that amendment would be futile because it lacks subject

17  matter jurisdiction over the proposed FAC based on diversity citizenship and the proposed FAC

18  does not allege a basis for federal question jurisdiction. Plaintiffs' motion for leave to amend is

19  denied.[5]

20  //

21  //

22  //

23  //

24  //

25

26

27  _____
    [5] As the court concludes that the proposed FAC is futile because it does not allege a basis for
28  subject matter jurisdiction, it need not reach Google's remaining arguments based on futility,
    delay, and prejudice.

United States District Court
Northern District of California

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend is denied.  The clerk shall enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: July 8, 2024



Donna M. Ryu
Chief Magistrate Judge